270 A.2d 510.

Dr. Jay N. Fishbein *vs.* Abram M. Zexter.

NOVEMBER 13, 1970.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

---

Roberts, C. J. This civil action was brought to recover on a promissory note executed by the defendant. The defendant thereupon made a counterclaim for money due under an alleged agreement with the plaintiff to compensate him for services rendered in connection with a transaction between the plaintiff and Dunkin' Donuts of America, Incorporated. A justice of the Superior Court granted the plaintiff's motion for summary judgment on the promissory note and denied the motion for summary judgment on the defendant's counterclaim. The cause was then heard on the counterclaim of the defendant by a justice of the Superior Court sitting without a jury who, finding for the defendant in the amount of $7,000, entered judgment for the defendant in the amount of $1,750, the difference between the award of $5,250 to the plaintiff on the note and the award to the defendant on the counterclaim. From that judgment the plaintiff is in this court prosecuting an appeal.

The record discloses that plaintiff invested in real estate on several occasions and that defendant at the time

under consideration was licensed by this state as a real estate broker. There is evidence that the parties became acquainted sometime in March 1965, when they engaged in transactions involving real estate not related to the instant case. In April 1965, defendant met an official of Dunkin' Donuts of America, Incorporated, who informed him of opportunities for investors to develop real estate in connection with the franchising activities of that corporation conducted through a subsidiary corporation.

In June 1965, defendant consulted with plaintiff to interest him in possible real estate investments. The defendant informed plaintiff that the corporation wished to interest investors as potential purchasers of two parcels of land, one located on Smith Street in the city of Providence and the other in Meriden, Connecticut. He informed plaintiff that the corporation was interested in these parcels of real estate as possible sites for franchising outlets. It is not disputed that plaintiff, defendant, and officials of that corporation conferred on several occasions during the summer of 1965 concerning the execution of leasing agreements between plaintiff and the franchising subsidiary of the corporation, Dunkin' Donuts Franchising Corporation.

During July 1965, plaintiff loaned defendant $5,000 for a period of six months, and defendant executed a promissory note and delivered it to plaintiff. The defendant testified that he had borrowed that money "in anticipation of the deal." As a result of these conferences plaintiff purchased the Smith Street parcel and agreed with the franchising corporation officials to lease the premises together with a building thereon to be erected by plaintiff to the franchising corporation for a term of 20 years. A similar arrangement was made with respect to the leasing to the franchising corporation of the parcel of property located in Meriden, Connecticut. On August 26, 1965,

such a lease was executed by plaintiff and the Dunkin' Donuts Franchising Corporation for the property in Meriden, Connecticut, and in September of that year a similar lease was executed by the parties with respect to the property located on Smith Street.

The case was then tried to the court on the question of whether the services performed by defendant for plaintiff were those of a broker. The plaintiff argues correctly that if the services constituted a brokerage contract, defendant's action to recover is barred by the statute of frauds. That statute, G. L. 1956 (1969 Reenactment) §9-1-4, provides that no action shall be brought "Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate. Unless the promise or agreement upon which such action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith * * *." In other words, the court passed upon the question of whether defendant acted as a broker for plaintiff or was merely acting as a finder who brought the parties together. If he were acting as a broker, the action would be barred by the above-quoted provisions of §9-1-4, it being conceded that there is no memorandum in writing as required by that statute.

The trial justice, in reaching a conclusion on this question, relied on the definition of a broker as set forth in *Ames* v. *Ideal Cement Co.*, 235 N.Y.S.2d 622. There the New York court defined a broker as one "* * * whose duty is to bring the parties to an agreement on his employer's terms." On the other hand, the trial justice defined a finder as follows: "The finder is one who finds, interests, introduces and brings the parties together for the deal which they themselves consummate." The New York court then went on to say, referring to the concept of a finder: "But their distinction from the status of a broker;

if the circumstances of the particular case require such a distinction to be drawn, lies in their bringing the parties together with no involvement on their part in negotiating the price or any of the other terms of the transaction."

The trial justice thereupon found on the evidence that defendant had established his status as a finder, the court saying at page 368 of the transcript: "The Court finds that on all of the evidence that this defendant was a finder. He brought Dr. Fishbein and Dunkin' Donuts together, that they negotiated their own deal and that the leases, Defendant's Exhibit B and Defendant's Exhibit C, are the result of the defendant's efforts. The defendant was not involved in the transfer of the real estate *per se* because Dunkin' Donuts had options on those parcels before the defendant even became involved so that the Court finds that *Section 9-1-4* is not applicable in the circumstances, no writing is required, and the Statute of Frauds is inapplicable."

We do not think it necessary in the circumstances of this case to define the term "finder." Clearly implicit in the decision of the trial justice is his finding that plaintiff had agreed to pay defendant for services rendered in bringing plaintiff together with representatives of Dunkin' Donuts of America, Incorporated. In short, it is our opinion that the trial justice found that the contract entered into between plaintiff and defendant was not a brokerage agreement, but was an agreement to pay defendant specified amounts for his services in seeking out and bringing plaintiff and Dunkin' Donuts together, so that they might negotiate a contract involving the franchising of the two outlets.

The record discloses that the trial justice gave full credence to the testimony of defendant that plaintiff had promised to pay him for his assistance in finding this particular business opportunity. The plaintiff, it is true,

testified to the contrary, stating that the arrangement that he had with defendant was, in effect, a brokerage agreement. The trial justice, however, was quite explicit in stating that he gave little weight to the testimony of plaintiff and made it clear that he rejected plaintiff's version of the contract that had been made by the parties. This conclusion, reached by the trial justice, is clearly evidenced by the language in his decision, particularly in discrediting the testimony of plaintiff. It is equally clear that he concluded that the agreement between these parties was one in which plaintiff agreed to pay defendant a fee with respect to each piece of property for bringing the parties together and enabling them to negotiate their own deal. This resulted in the leasing of the property to Dunkin' Donuts. It is equally obvious that he rested this conclusion on his acceptance of the testimony of defendant and his rejection of the testimony of plaintiff.

This case was submitted by the parties on the law and the facts to a trial justice sitting without a jury. In such circumstances his findings will be given great weight and we will not disturb them unless they are clearly wrong. *Peloquin* v. *Arden Engineering Co.,* 104 R. I. 671, 248 A.2d 316. In the instant case the conclusion of the trial justice rests entirely upon his evaluation of the credibility of the parties. In *Abilheira* v. *Faria,* 102 R. I. 214, 229 A.2d 758, we noted our acceptance of the proposition that credibility is for the trial justice in the first instance and that this court will not disturb findings made by a trial justice by reason of discrepancy in the testimony of the witnesses absent some showing of self-impeachment in the evidence upon which the trial justice relied in reaching those conclusions. This, in our opinion, is a fundamental principle in the appellate process, and were we to hold otherwise, we would render nugatory the Superior Court trial of such cases.

678

We have closely scrutinized the testimony in this case, but do not perceive any element of self-impeachment therein so far as the testimony of defendant is concerned. The appellant on an appeal clearly has the burden in these cases to establish that the trial justice was clearly wrong in that he overlooked or misconceived material evidence on a controlling issue or to point out to this court some inherent improbability in the testimony upon which the trial justice relied. *Jonette Jewelry Co.* v. *Liberty Mutual Insurance Co.*, 105 R. I. 308, 251 A.2d 521. We find no error in the decision of the trial justice.

We are not overlooking plaintiff's contention that defendant's admission in his counterclaim that the money owed him by plaintiff was for "commissions earned by the Defendant in connection with real estate transactions" is binding upon defendant and that he cannot recover under evidence establishing an agreement to compensate him as a finder. Such an argument would have had validity prior to the adoption of Super. R. Civ. P. in January 1966. Thereafter we held that by virtue of the provisions of Rule 15 (b) "* * * issues tried by express or implied consent, even though not raised by the pleadings, should be treated in all respects as if they had been pleaded even in the absence of amendment." *Cofone* v. *Narragansett Racing Association, Inc.*, 103 R. I. 345, 350, 237 A.2d 717, 720.

In *Halpert* v. *Rosenthal*, 107 R. I. 406, 267 A.2d 730, we noted that while the difference between a defendant's "allegata" and his "probata" might have had significance in the days prior to the adoption of Super. R. Civ. P., the common-law rule that required that proof conform to the pleadings is no longer the law in this jurisdiction. It has been negated, we said, by that portion of Rule 15 (b) which provides that where an issue is tried in a cause by the expressed or implied consent of the parties, it shall be

treated in all respects as if it had been pleaded even in the absence of an amendment.

An examination of the transcript fails to disclose any objection made by the plaintiff to the introduction of evidence designed to establish an agreement other than a brokerage contract, and in these circumstances we are persuaded that the question of whether the defendant was a finder was tried with the implied consent of all parties. This argument of the plaintiff, in our opinion, is without merit.

The plaintiff's appeal is denied and dismissed, and the judgment appealed from is affirmed.

*Rosenstein, Surdut and Macksoud, Kenneth J. Macksoud, Louis Baruch Rubinstein,* for plaintiff.

*Bernard F. McSally,* for defendant.