**C. Norris BUCKINGHAM,**
**Plaintiff-Appellant,**

v.

**D. Morris STILLE and Vivian Stille,**
**Defendants-Appellees.**

No. 84–1635.

Court of Appeals of Iowa.

Oct. 29, 1985.

Robert Kohorst and Daniel J. Murtaugh of Louis, Moore, Kohorst, Louis, Murtaugh & Kohorst, Harlan, for plaintiff-appellant.

Mark D. Swanson of Swanson, Boeye & Bloom, and Phillip C. Armknecht of Reese & Armknecht, Red Oak, for defendants-appellees.

Heard by DONIELSON, P.J., and SCHLEGEL, and HAYDEN, JJ.

HAYDEN, Judge.

Plaintiff appeals from an adverse judgment in an action based upon an alleged oral contract for a real estate finder's fee. He asserts that: 1) the statute of frauds provision set forth in 700 Iowa Administrative Code 1.23 is not applicable to oral finder's fee agreements; 2) defendants' statute of frauds defense was waived by partial performance and equitable estoppel, and 3) substantial evidence supports plain-

tiff's recovery on either contract or quantum meruit theories. We affirm.

C. Norris Buckingham was a licensed real estate broker. In 1977, he was contacted by D. Morris and Vivian Stille, who wished to sell their Wyoming ranch and buy some land in southwest Iowa. Buckingham met with the Stilles several times between 1977 and 1980. During this time, Buckingham claims the Stilles agreed to pay a finder's fee in the amount of five percent of the value of the Stilles' Wyoming ranch.

In January 1981, the Stilles wrote Buckingham and indicated that they were still interested in purchasing some land in Iowa. In July 1982, Buckingham received a tip that one Marian Confer was interested in selling his farm and purchasing a ranch out west. Plaintiff spoke to Confer and then called the Stilles to confirm the finder's fee arrangement. The Stilles allegedly indicated that the arrangement was still good. A few days later, plaintiff and Confer visited the Wyoming ranch. At that time Morris Stille allegedly told Buckingham that he would not be able to complete the five percent finder's fee agreement.

In September of 1982, defendants listed their ranch with a Wyoming realtor. They subsequently sent a letter to plaintiff informing him of the listing contract and suggesting that plaintiff contact their realtor to make a fee-splitting arrangement.

In the early part of 1983, Buckingham met with Confer and Confer's attorney to help draft an offer for defendants' property. Defendants rejected the offer and all negotiations stopped. Later that year defendants and Confer exchanged properties.

Buckingham brought this action to recover the finder's fee. The trial court ruled that plaintiff failed to show that the finder's fee agreement existed between him and defendants. The court found that any sort of agreement failed when plaintiff learned defendants' ranch was listed with a Wyoming realtor and began working with the realtor. Buckingham has appealed.

In reaching its decision, the trial court indicated that the rationale of *Maynes Real Estate, Inc. v. J.F. McPherron*, 353 N.W.2d 425 (Iowa 1984), was controlling. In *Maynes* the supreme court considered whether a broker could recover under the theory of quantum meruit although he had not met the written agreement requirement of section 1.23, Iowa Administrative Code, chapter 700. The court ultimately concluded that quantum meruit recovery would thwart the purpose of section 1.23 and, thus, recovery was not allowed. *Id.* at 428.

Buckingham claims that the trial court's reliance on *Maynes* is misplaced. He argues that the present case is distinguishable since he is attempting to enforce a finder's fee contract rather than a listing agreement. Because of this, it is claimed that the writing requirement of section 1.23 is not applicable and quantum meruit is available.

The determinative issue is whether section 1.23 of the Iowa Administrative Code, chapter 7, applies to finder's fee contracts. If this section does apply, then any judicial interpretations such as *Maynes* would also be applicable.

Section 1.23 provides, in part:

All listing agreements shall be in writing, properly identifying the property and containing all of the terms and conditions under which the property is to be sold, including the price, the commission to be paid, the signatures of all parties concerned and a definite expiration date. It shall contain no provision requiring a party signing the listing to notify the broker of the listing party's intention to cancel the listing after such definite expiration date.

As with a statute, we seek to determine and give effect to the intent of those who drafted the rule. Pursuant to Iowa Code section 4.2, we construe the provision liberally "to promote its objects and assist the parties in obtaining justice."

The purpose of section 1.23 was discussed in *Milholin v. Vorhies*, 320 N.W.2d 552, 554 (Iowa 1982). There the court indicated that the rule is analogous to a statute

of frauds provision. The court further endorsed a statement of the Vermont Supreme Court characterizing a similar rule:

> Ostensibly, the purpose of this rule is for the protection of the public to establish fair dealings between parties, standardize the procedure and practices in the real estate business and to prevent fraud. Its purpose is similar to that of the statute of frauds, which, ... "is to prevent a party from being compelled, by oral and perhaps false testimony to be held responsible for a contract he claims he never made."

*Id.* (quoting *Green Mountain Realty, Inc. v. Fish,* 133 Vt. 296, 299, 336 A.2d 187, 189 (1975)). The effect of the rule "is not to invalidate oral listing agreements, but to make them unenforceable under proper objection." *Id.*

Our research reveals several other jurisdictions with rules or statutory provisions having similar purposes. However, courts have reached varying conclusions regarding their applicability to finder's fees contracts. *See* Annot., 24 A.L.R.3d 1160, 1168–69 (1969). In jurisdictions where oral finder's fee contracts are considered enforceable, courts generally limit their consideration to the narrow nonnegotiating powers of a "finder." *See, e.g., State v. Rentex, Inc.,* 51 Ohio App.2d 57, 365 N.E.2d 1274 (1977); *Tyrone v. Kelley,* 9 Cal.3d 1, 106 Cal.Rptr. 761, 507 P.2d 65 (1973). The fact that the nature of the business is real estate is deemed to be of little consequence.

Some courts have recognized that the line of demarcation between finders and brokers is somewhat vague and have refused to exempt finders from operation of the statute of frauds provisions.

In *Schoenfeld v. Silver Moon Springs, Inc.,* 325 F.Supp. 199 (Wisc.1971), a Wisconsin district court considered the following statute of frauds provision:

> Every contract to pay a commission to a real estate agent or broker or to *any other person* for selling or buying real estate shall be void unless such contract or note or memorandum thereof describ-ing such real estate, expressing the price for which the same may be sold or purchased, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller, be in writing and be subscribed by the person agreeing to pay such commission.

Section 240.10(1), Wis.Stats. (1967) (emphasis added).

The plaintiff in *Schoenfeld* argued that this provision was inapplicable since his services were limited to finding a buyer and he would not participate in actual negotiations with the buyer. 325 F.Supp. at 200. In rejecting this argument, the court noted that the statutory phrase "any other person" was broad enough to include the plaintiff. *Id.* at 201. The court also refused to recognize any legally significant distinction between "selling" or "procuring a purchase," reasoning that the words are synonymous terms when used in real estate contracts. *Id.* at 202.

In *Minichiello v. Royal Business Funds Corp.,* 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793 (1966), the New York Court of Appeals recognized that contracts required to be evidenced by a writing include a contract for compensating a "finder," "originator," or "introducer." *Id.* at 525, 277 N.Y.S.2d at 270, 223 N.E.2d at 795. In reaching this conclusion, the court stated:

> If, indeed, there is any definite distinction between finders and brokers, it would probably be in the quantity of services rendered by each. It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission. But the difficulty in proving services ordinarily varies in an inverse proportion to the amount of services rendered.
>
> Thus, to include brokers and to exclude finders from the statute is to permit oral testimony in the very cases which are the least susceptible to oral proof.

*Id.* at 527, 277 N.Y.S.2d at 272, 223 N.E.2d at 796.

We subscribe to the view set forth in *Minichiello* and *Schoenfeld.* The services performed by finders and brokers are very similar. As such, we see little reason to distinguish between the two when applying commission rule 1.23. The nature of real estate transactions, whether they involve brokers or finders, is such that unfounded and multiple claims for commissions are frequently asserted. Likewise, in absence of a writing requirement employers are able to escape liability by simply denying the fact of employment. We believe the commission intended to guard against these evils through the writing requirement set forth in rule 1.23. Absent some indication from the commission, we are not willing to allow persons to avoid the writing requirement simply by characterizing themselves as "finders" rather than "brokers." To do so would seriously undermine the intent of the commission, as well as the effectiveness of the rule.

Furthermore, as in *Minichiello* and *Schoenfeld,* the language of rule 1.23 is broad enough to include finders. The rule requires "listing agreements" to be in writing, a term which the commission has defined as "an agency agreement, whereby the property owner employs the real estate broker to *find* a purchaser for his property, or a third party employs the broker to *find* property for him to buy." Iowa Real Estate Commission, Real Estate Manual at 74 (1980) (emphasis added). It is evident that this definition would include the services performed by the plaintiff in this action— finding a purchaser for the Stilles' Wyoming real estate. In a broader sense, we determine this definition includes all services commonly performed by a finder.

Accordingly, we hold that finder's fee contracts must be in writing pursuant to the real estate commission rule 1.23. We further hold that the *Maynes* decision is controlling insofar as it precludes quantum meruit recovery for contracts which do not comply with rule 1.23. As the *Maynes* court indicated recovery under this theory would thwart the purpose of section 1.23. 353 N.W.2d at 428. For similar reasons we also reject Buckingham's claim that the Stilles are equitably estopped from asserting the statute of frauds provision due to part performance. The provision in question explicitly prohibits recovery on oral contracts of employment; plaintiff cannot now attempt to bypass this mandate by relying on an equitable theory of recovery, whether it be quantum meruit or equitable estoppel. As the *Maynes* court indicated, "If this rule works some inequities in particular cases, it is within the purview of the legislature and not this court to correct what is now well-settled public policy." *Id.*

Our holding today precludes recovery for Buckingham under a contract theory or an equitable theory. Because of this, we need not address Buckingham's arguments concerning sufficiency of the evidence to support the trial court's decision.

AFFIRMED.