METRO PROPERTIES, INC.

v.

Edward YATSKO et al.

Nos. 99–353–Appeal.

Supreme Court of Rhode Island.

Dec. 18, 2000.

Richard Bruce Feinstein, Providence, for Plaintiff.

Robert A. D'Amico, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This appeal concerns an alleged breach of an oral agreement among real-estate brokers to share a commission on the sale of real estate. It also addresses the propriety of an attorney's fee award in connection with a failed attempt to arbitrate this dispute. The plaintiff, real-estate broker Metro Properties, Inc. (Metro), appeals from a Superior Court summary judgment in favor of the defendants, real-estate agents Edward Yatsko and Arthur Yatsko d/b/a Salisbury Agency (Salisbury). Metro contends that the motion justice erred because issues of material fact existed that precluded the granting of summary judgment. Following a prebriefing conference, a single justice of this Court directed the parties to show cause why this appeal should not be summarily decided. Upon reviewing both parties' written submissions and considering their oral arguments, we conclude that no cause has been shown and that we can decide this case without further briefing and argument.

In 1995, the Keyes Development Corporation (Keyes), the owner of a large commercial building in West Warwick, offered the property for sale. Cox Communications, Inc. (Cox) occupied the building as a tenant and possessed a right of first refusal to purchase the property for the same price as a prospective third-party purchaser. That same year, Regina Joly Maxwell (Maxwell), an agent for Metro, sought to find a purchaser for the property. In seeking this purchaser, Maxwell dealt with Salisbury, which served as Keyes's sales agent. Salisbury conceded that, during its

initial dealings with Metro, it forwarded a memorandum to Metro's Maxwell, stating that Salisbury "will share [its] commission on an equal basis with any cooperating broker who introduces us to a buyer who successfully closes on the Property."

Metro, through the efforts of Maxwell, eventually procured a prospective purchaser, Property Advisory Group (PAG). Thereafter, Metro prepared an "Offer to Purchase" from PAG to Keyes. Metro and Salisbury agreed that each would be paid a 2 percent commission in connection with this transaction if it eventually closed. The purchase offer, however, was subject to several conditions, including PAG's ability to obtain financing and its receipt of an answer to its purchase offer no later than October 6, 1995. Most significantly, the offer was also subject to "Tenant's Right of First Refusal as stated in the Lease Article 19[,] Section 19.2." Ultimately, the tenant, Cox, decided to exercise its right of first refusal, and it purchased the property for $4,600,000. Salisbury received a 4 percent commission on the Cox sale in the amount of $184,000.

But Metro asserted that Salisbury's Arthur Yatsko (Yatsko) had represented to Metro that Keyes would not pay any brokerage commission to Salisbury if Cox exercised its right to purchase the property. Metro contends that it relied on this representation in procuring PAG as a potential purchaser, as it believed that both Metro and Salisbury were sharing the same risk in connection with the proposed PAG transaction. Metro alleged that, contrary to Yatsko's oral representations, Keyes had intended to pay a full brokerage commission at all times—even if Cox purchased the property—and that Salisbury had concealed this fact from Metro. However, it appears from the record that even if Salisbury had communicated the alleged misrepresentations to Metro, it could not have induced Metro to procure PAG. The deposition testimony of Metro's agent, Maxwell, established that Salisbury's Yatsko did not tell her that Keyes was unwill-

ing to pay a commission for a sale to Cox until *after* the offer from PAG had been signed. In addition, other evidence of record indicated that Metro gave no thought to the possibility of a sale to Cox when it set out to procure PAG as a prospective purchaser of the property. Thus, no causal relationship existed between the alleged misrepresentations and the work product for which Metro sought compensatory damages.

After learning of the commission that Cox paid to Salisbury, Metro demanded a half share of the commission. When Salisbury refused Metro's demand, Metro filed a Request and Agreement to Arbitrate with the Rhode Island Association of Realtors (RIAR). The arbitration request form provided that, if "it is necessary for any party to this arbitration to obtain additional confirmation and enforcement of the award against me, I agree to pay the party obtaining such confirmation the costs and reasonable attorney's fees incurred in obtaining such confirmation and enforcement." The grievance committee of the RIAR found that Metro's complaint was nonarbitrable. The committee stated that "[e]vidence presented does not demonstrate a contractual relationship between [the parties] * * *." Metro appealed this determination to the RIAR board of directors which upheld the grievance committee, and the RIAR returned the arbitration filing-fee check to Metro.

Thereafter, Metro filed this action against Salisbury, alleging breach of contract, unjust enrichment, constructive trust, and fraud and deceit. Salisbury counterclaimed for its attorney's fees pursuant to the RIAR rules. After conducting discovery, Metro moved to dismiss Salisbury's counterclaim and Salisbury moved for summary judgment on Metro's claims. After a hearing, a Superior Court motion justice granted Salisbury's motion for summary judgment on all counts. She also denied Metro's motion to dismiss Salisbury's counterclaim for attorney's fees and granted Salisbury its requested award of

attorney's fees. She ruled that Metro did not have a written agreement entitling it to a commission upon the sale of the property to Cox. She also concluded that Metro had nothing to do with Cox purchasing the property and that Metro had not been induced by Salisbury's allegedly fraudulent statements to procure PAG as a purchaser. Finally, in awarding attorney's fees to Salisbury, she decided that the arbitration rules were binding on Metro because the RIAR grievance committee had considered Metro's arbitration request. After some further proceedings on the amount of attorney's fees, judgment entered in favor of Salisbury and Metro then filed its appeal.

Metro argues that the motion justice erred in ruling that the statute of frauds barred its claims for unjust enrichment, constructive trust, and breach of implied contract. It suggests that its fraud claims are not barred by the statute of frauds and that a question of material fact exists concerning whether Salisbury's alleged misrepresentations induced Metro to enter into the co-brokering agreement. Metro also argues that its claims for unjust enrichment and constructive trust fall outside the statute of frauds because they are not claims involving the enforcement of contract rights. Metro further asserts that previous cases which have refused to enforce oral agreements for brokers' commissions did not involve co-brokering agreements. Metro contends that state law requiring a commission agreement to be in writing to be enforceable (G.L.1956 § 9–1–4(6)) is for the benefit of the public and has no application to a transaction between two commercial real-estate brokers. Therefore, it suggests, a trier of fact could find that an implied agreement existed to share a commission based upon Keyes's sale of the property to Cox.

Salisbury counters that the statute of frauds bars Metro's claims because it lacked a written contract for the payment of a commission upon Keyes's sale of the property to Cox. Also, Salisbury notes that Metro submitted no evidence that would indicate the parties ever reached "a meeting of the minds" to share a commission on the sale to Cox. Maxwell stated that Salisbury's Yatsko told her that "if I don't get paid, you don't get paid" in speaking about a commission. But Salisbury suggests that this alleged statement, even if true with respect to the proposed PAG sale, did not mean that Salisbury had promised Metro that it would share in a commission on any sale of the property to Cox. Salisbury further argues that because Metro was not a procuring cause for the sale to Cox it cannot recover under an unjust enrichment theory. Additionally, it argues that Metro's fraud claim must also fail on summary judgment because no evidence existed that Salisbury had induced Metro to procure PAG via fraudulent misrepresentations. Salisbury notes Metro's admission that the alleged misrepresentations occurred after Metro already had procured PAG as a prospective purchaser and after a purchase offer already had been signed. Therefore, Salisbury contends, it did not make any misrepresentations which could have induced Metro to act as a broker in this transaction.

### Analysis

▆▆▆▆ Under § 9–1–4(6), no action shall be brought for the payment of a real estate commission unless the agreement to pay such a commission is in writing and signed by the party charged with paying the commission. In order to receive a commission, a broker must have a written agreement for the commission. *See Dooley v. Lachut*, 103 R.I. 21, 23–24, 234 A.2d 366, 368 (1967). Even if allegations of fraud are true, a broker is not entitled to a commission unless he has a written agreement for the payment of same. *See id.* Section 9–1–4(6) is to be strictly construed and applied. *See Wright v. Smith*, 105 R.I. 1, 2, 249 A.2d 56, 57 (1969) (per curiam). Doctrines of equitable relief, such as *quantum meruit*, are unavailable in an action to recover a real estate commission. *See id.* And because § 9–1–4(6) contains no exclusion or exception for oral agree-

ments among real-estate brokers to share a commission, we are not persuaded that we should create one judicially.

■ Moreover, even if we were to assume arguendo that § 9–1–4(6) was inapplicable to agreements between co-brokers to share commissions, the evidence of record does not demonstrate that Metro was a procuring cause for Cox's purchase of the property. A co-broker must be a "'primary, proximate, and procuring cause'" of the real estate sale to share in a commission. *Melbourne v. Griffith,* 263 Md. 486, 283 A.2d 363, 364 (1971) (quoting *Leimbach v. Nicholson,* 219 Md. 440, 149 A.2d 411, 446 (1959)). Applying this standard to the undisputed facts of this case, we hold that Metro was not entitled to share in the commission as a matter of law.

■ Based upon the above-cited statutes and case law, we hold that Metro may not recover a commission under the theory of an implied or oral contract. In addition, its claims for fraud, unjust enrichment, and constructive trust are also untenable because Metro would have had to prove that Salisbury's alleged misrepresentations induced Metro to act to its detriment. *See Travers v. Spidell,* 682 A.2d 471, 472–73 (R.I.1996). But because Metro had already procured PAG as a purchaser when Salisbury's Yatsko communicated his alleged misrepresentations, Metro could not have been fraudulently induced to perform brokerage services in reliance upon these statements. Moreover, the record does not reveal that Metro's efforts produced any effect in causing Cox to purchase the property. Hence, Salisbury has not been unjustly enriched because of Metro's actions.

■ Metro also contends that the offer-to-purchase agreement was ambiguous and could be construed to allow it to recover a share of the commission from the sale of the property to Cox. And because the offer-to-purchase is ambiguous, it argues, a trier of fact could examine prior dealings of the parties and their prior understandings in determining whether the agreement was meant to apply to a sale of the property to Cox. Salisbury argues, conversely, that the offer-to-purchase agreement established only that Metro would receive a 2 percent commission if PAG bought the property. It contends that the agreement unambiguously provides that the sale to PAG would be subject to Cox's exercise of its right of first refusal.

The written agreement establishes the requirements for Metro to receive a commission. This document is the only relevant writing to determine whether Metro is entitled to a commission. *See Brenner Associates, Inc. v. Rousseau,* 537 A.2d 120, 123 (R.I.1988). We conclude that the document is unambiguous in granting a commission to Metro upon completion of the sale to PAG. But the sale to PAG was subject to several conditions, including Cox's exercise of its right of first refusal. The plain meaning of this document, we hold, is that Metro was not entitled to a commission when the proposed PAG purchase failed to result in a sale to that party because Cox exercised its right of first refusal.

Metro also asserts that the motion justice impermissibly engaged in fact-finding before she granted summary judgment in favor of Salisbury. In reviewing a motion for summary judgment this Court "'examine[s] the pleadings and affidavits in the light most favorable to the nonmoving party to decide whether an issue of material fact exist[s] and whether the moving party [is] entitled to summary judgment as a matter of law.'" *Buonanno v. Colmar Belting Co.,* 733 A.2d 712, 715 (R.I.1999) (quoting *Textron, Inc. v. Aetna Casualty and Surety Co.,* 638 A.2d 537, 539 (R.I. 1994) "'Summary judgment is proper when there is no ambiguity as a matter of law.' * * * It is the burden of the party opposing a motion for summary judgment to assert facts that 'raise a genuine issue to be resolved.'") *Id.* Metro asserts that a trier of fact could find that it was entitled

to a half share of the commission based on alleged statements made by Salisbury's Yatsko and on the "intimate" relationship of the parties.

We are convinced, however, that as a matter of law Metro was not entitled to recover. *Dooley* and *Wright* clearly establish that a written agreement is necessary for a broker to recover a commission. The parties did not have a written agreement entitling Metro to a commission upon Cox's purchase of the property. Also, the undisputed facts do not demonstrate that the alleged fraudulent statements induced Metro to procure PAG as a prospective purchaser. Finally, even if oral commission-sharing agreements between co-brokers could be enforced, Metro's actions were not shown to have been a proximate cause of Cox's purchasing the property. Therefore, Metro was not entitled to a share of the commission.

■ Finally, Metro argues that the award of attorney's fees in Salisbury's favor was erroneous because the arbitration panel stated that Metro's claim was nonarbitrable. Consequently, it contends, the case never was arbitrated and, therefore, the arbitration provision requiring the payment of the attorney's fees incurred by any party to enforce an arbitration award was inapplicable. Salisbury responds by noting that the arbitration panel ruled that no contractual relationship existed between the parties. Therefore, it posits, the case was indeed arbitrated and the arbitration rule requiring the payment of attorney's fees was applicable.

■ Generally, a court can award attorney's fees only pursuant to statutory authority or a contractual provision allowing it to do so. *See Eleazer v. Ted Reed Thermal, Inc.*, 576 A.2d 1217, 1221 (R.I. 1990). The specific provision in the arbitration form at issue states that if a party does not comply with an arbitration award and it is necessary for the award to be enforced through judicial proceedings, the noncompliant party agrees to pay the pre-

vailing party's attorney's fees incurred in enforcing the arbitration award. In this case, however, no such award was ever made nor was any "additional confirmation and enforcement" of any award sought because of the other party's noncompliance with such an award. The panel specifically ruled that Metro's grievance was not arbitrable and it refunded Metro's arbitration application fee. Therefore, because RIAR found that Metro's complaint was nonarbitrable and, accordingly, refused to arbitrate the dispute, the motion justice erred in awarding attorney's fees against Metro because the preconditions for the fee-award provision were not triggered by these circumstances.

For these reasons, we hold that the hearing justice properly granted summary judgment in favor of Salisbury. Hence, we deny Metro's appeal and affirm the grant of summary judgment with respect to the merits of its claims. However, we sustain Metro's appeal in regard to the attorney's fees awarded because the motion justice erred in granting such relief based upon the contractual standard in the arbitration form that was inapplicable to this situation. Thus, we affirm in part, reverse in part, and vacate any orders and judgments pertaining to the attorney's fees award. We also return the papers in this case to the Superior Court for entry of a judgment consistent with this opinion.