**MUTUAL DEVELOPMENT CORPORATION**

v.

**WARD FISHER & COMPANY, LLP et al.**

No. 2009–168–Appeal.

Supreme Court of Rhode Island.

July 13, 2012.

Lauren E. Jones, Esq., Providence, for Plaintiff.

Michael J. Polak, Esq., for Defendants.

Present: SUTTELL, C.J., FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON, for the Court.

The plaintiff, Mutual Development Corporation, appeals from the Superior Court's grant of summary judgment in favor of the defendants, Ward Fisher & Company, LLP (Ward Fisher) and WF Realty & Investment, LLC (WF Realty). On appeal, the plaintiff contends that the hearing justice improperly interpreted and applied subsection 6 of G.L.1956 § 9–1–4, the Statute of Frauds, in deciding that said subsection could properly be invoked with respect to an alleged oral finder's fee agreement between the plaintiff and the defendants, thereby barring recovery by the plaintiff.

This case first came before this Court on December 7, 2010, in accordance with an order directing both parties to appear and show cause why the issues raised on appeal should not be summarily decided. After considering the arguments of counsel at that show cause hearing as well as in their written submissions, we determined that cause had been shown.

Accordingly, we directed the case to proceed to full briefing and argument, and we also requested the parties to address (1) "the issue of whether there is a distinction between a finder and a broker with respect to real estate transactions, and, if so whether the language of the statute of frauds, G.L.1956 § [9–1–4], encompasses a finder as well as a broker;" and (2) the issue of "[w]hether the statute of frauds applies equally to percentage-based commissions and flat-sum commissions, or solely to percentage-based commissions or fees."

Thereafter, the case proceeded to full argument on March 1, 2012.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

It is undisputed (1) that the underlying transaction in the instant case involved the sale of real estate; (2) that plaintiff seeks to recover a commission or a fee for work that it allegedly performed in connection with that sale; and (3) that there is no written agreement between the parties providing for any such compensation.

Although certain other facts remain in dispute, those facts are not material to the issue of law before us. For the purpose of providing background and clarity, we shall recite as necessary the facts as presented in the record.

In September of 2001, defendants were actively seeking to purchase a commercial building to house their accounting offices. During that search process, defendants met with Stephen Soscia, the president of the plaintiff corporation; at that time, Mr. Soscia introduced to defendant Ward Fisher two commercial properties that were available for leasing. However, defendant Ward Fisher ultimately decided not to pursue those properties because it preferred to purchase rather than lease a property.

In September of 2002, Mr. Soscia became aware of a property located at 250 Centerville Road in Warwick, which he believed would be of interest to defendant Ward Fisher. On or about September 11, 2002, Mr. Soscia introduced the 250 Centerville Road property to partners of Ward Fisher; it is undisputed that, prior to Mr. Soscia's introduction, the partners had no knowledge of that property. The defendant Ward Fisher then decided to make an offer to purchase that property; and, at some point during discussions regarding the property, Mr. Soscia made mention of his expectation of a fee for finding the

location. The exact details of that conversation are in dispute. Thereafter, Mr. Soscia drafted an offer to be submitted; and, on September 13, 2002, defendant Ward Fisher submitted a formal offer. However, the seller decided to accept the offer of another party, and defendant Ward Fisher's offer was rejected.

The defendant Ward Fisher decided to further pursue the property, and it submitted another offer on September 19, 2002, without the aid of Mr. Soscia; that offer was ultimately accepted by the seller, and defendant WF Realty[1] purchased the 250 Centerville Road property, which had originally been introduced by Mr. Soscia.[2]

On February 20, 2007, plaintiff filed a complaint against defendants in the Superior Court for Kent County. The complaint contained the following counts: breach of contract; fraud; and unjust enrichment. Thereafter, defendants filed an answer in which they (1) averred that plaintiff had failed to state a claim upon which relief could be granted and (2) asserted the affirmative defense of the Statute of Frauds. On October 1, 2008, after the parties had exchanged discovery and had taken the depositions of some of the individuals involved in the transaction at issue, defendants moved for summary judgment on all counts. In response, plaintiff filed an objection and a cross-motion for summary judgment.

On November 10, 2008, a hearing on the motions for summary judgment was held before a justice of the Superior Court. At that hearing, plaintiff argued that "a finder's fee is not subject to the Statute of Frauds and, in fact, can be based on any oral contract." In response, defendants

contended that plaintiff was "seeking to recover a fee based upon [defendants'] purchase of real estate" and that, therefore, subsection 6 of the Statute of Frauds (§ 9-1-4) applied. In delivering his bench decision, the hearing justice stated in pertinent part as follows:

"The Statute of Frauds would prohibit even a finder's fee, it is that broad. Thus, for a broker or a finder to receive a commission, the broker or the finder must have a written agreement for that commission. * * * Therefore, any agreement that Mutual [Development] may have, any oral agreement, is unenforceable. * * * It's the Legislature who set a clear policy and has spoken here and Mutual [Development] being in the business should have recognized the importance of getting a written document in advance."

The hearing justice then denied plaintiff's cross-motion for summary judgment, and he granted summary judgment in favor of defendants.

The defendants subsequently moved for entry of final judgment; in response, plaintiff filed an objection, alleging that the hearing justice had entered summary judgment as to only two of the three counts contained in the complaint. Consequently, on February 27, 2009, the parties returned before the same justice of the Superior Court for a hearing on defendants' motion for summary judgment with respect to the remaining count (fraud). The hearing justice reserved decision on that issue; then, on March 3, 2009, the hearing justice issued an order ruling that summary judgment be entered for defendants on all counts. On that same day,

1. The purchase and sales agreement reflects that defendant WF Realty was the entity which purchased the property. The defendant WF Realty consists of former and current partners of defendant Ward Fisher.

2. The record does not clearly indicate why the 250 Centerville Road property again became available for purchase.

final judgment was entered on all counts in favor of defendants. Thereafter, plaintiff timely appealed.

## II

## Standard of Review

We have often recognized the principle that "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *See Employers Mutual Casualty Co. v. Arbella Protection Insurance Co.*, 24 A.3d 544, 553 (R.I.2011) (alteration in original) (internal quotation marks omitted); *see also Habershaw v. Michaels Stores, Inc.*, 42 A.3d 1273, 1275 (R.I.2012); *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009). The burden rests upon the nonmoving party "to prove the existence of a disputed issue of material fact by competent evidence; it cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Hill v. National Grid*, 11 A.3d 110, 113 (R.I.2011) (internal quotation marks omitted); *see also Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1121 (R.I.2011); *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 557 (R.I.2009). We remain ever mindful, however, "that summary judgment is an extreme remedy that warrants cautious application." *Young*, 973 A.2d at 557 (internal quotation marks omitted); *see also Horton*, 22 A.3d at 1121; *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 390 (R.I.2008).

This Court reviews the granting of a motion for summary judgment in a *de novo* manner, applying "the same standards and rules as did the hearing justice."

*Cheaters, Inc. v. United National Insurance Co.*, 41 A.3d 637, 642 (R.I.2012); *see also Empire Acquisition Group, LLC v. Atlantic Mortgage Co.*, 35 A.3d 878, 882 (R.I.2012); *Ouch v. Khea*, 963 A.2d 630, 632 (R.I.2009).

Since this case requires us to engage in statutory interpretation, we also note that "questions about the meaning of statutes are reviewed *de novo* by this Court." *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I.2009); *see also Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I. 2011); *Mullowney v. Masopust*, 943 A.2d 1029, 1032 (R.I.2008).

## III

## Analysis

In view of the fact that the Statute of Frauds is central to the determination of the instant appeal, we begin by setting forth the following relevant portions of that venerable statute:

"No action shall be brought:

" * * *

"(6) Whereby to charge any person upon any agreement or promise to pay any commission for or upon the sale of any interest in real estate;

"(7) * * * unless the promise or agreement upon which the action shall be brought, or some note or memorandum thereof, shall be in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized." Section 9–1–4.

On appeal, plaintiff contends that, although this Court has strictly applied subsection 6 of the Statute of Frauds with respect to brokers and agents, it has recognized that that subsection does not apply to a finder's fee—plaintiff's rationale being that there is a "well-recognized distinction"

between brokers and finders. In support of that contention, plaintiff cites *Brochu v. Santis,* 939 A.2d 449 (R.I.2008); *Bottomley v. Coffin,* 121 R.I. 399, 399 A.2d 485 (1979); and *Fishbein v. Zexter,* 107 R.I. 672, 270 A.2d 510 (1970). The plaintiff further argues that the presence of the word "commission" in subsection 6 of the Statute of Frauds is consistent with what it contends is this Court's recognition of the distinction between a broker and a finder; plaintiff's argument is that "[t]he use of the word 'commission' is freighted with its long-term, well-established, common meaning of a percentage-based means of compensation" and that it is, therefore, quite distinct from "other forms of compensation"—*viz.,* a "finder's fee."

In response, defendants candidly acknowledge that this Court has recognized that a distinction between a broker and a finder is operative in some circumstances. However, defendants contend that, in the context of the Statute of Frauds, no such distinction has been made nor should it be made. The defendants argue that, when making a determination with respect to the applicability of subsection 6 of the Statute of Frauds, "it is not the 'who' that matters, but the 'what.' " The essence of defendants' contention is that it is "the nature of the underlying deal that is determinative." In addition, defendants take issue with plaintiff's characterization of the term "commission;" they advocate for a broad understanding of that term, contending that that term "encompass[es] both percentage-based as well as flat-fee compensation."[3] Ultimately, defendants argue that plaintiff's interpretation of the Statute of Frauds and the applicable case law would "eviscerate" the purpose of the Statute of Frauds, which purpose defen-

dants submit is "to protect the public from unfounded claims and prevent unnecessary and costly litigation."

■ As we embark upon our analysis of the issues that this case presents, we remain keenly aware of the long-standing principle that, in order to fulfill the "overriding public policy of the statute," subsection 6 of the Statute of Frauds "requires that it be strictly construed and strictly enforced." *See Heyman v. Adeack Realty Co.,* 102 R.I. 105, 111, 228 A.2d 578, 582 (1967); *see also Brochu,* 939 A.2d at 453; *Metro Properties, Inc. v. Yatsko,* 763 A.2d 617, 620 (R.I.2000); *Wright v. Smith,* 105 R.I. 1, 2, 249 A.2d 56, 57 (1969). This Court has noted that "[t]o do otherwise would defeat the basic purpose of the statute." *Heyman,* 102 R.I. at 111, 228 A.2d at 582.

## A

### Is there a Finder/Broker Distinction Under the Statute of Frauds?

The plaintiff places primary reliance on this Court's decision in *Fishbein v. Zexter,* 107 R.I. 672, 270 A.2d 510 (1970), for its contention that subsection 6 of the Statute of Frauds does not apply to a finder's fee. On that basis, plaintiff contends that the agreement between it and defendants did not have to be memorialized in "some note or memorandum * * * in writing, and signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized." *See* § 9–1–4.

In *Fishbein,* the plaintiff appealed to this Court from a judgment of the Superior Court; that judgment was entered in favor of the defendant on his counterclaim for money due under "an alleged agree-

---

**3.** For the purposes of this opinion, we shall treat the terms "flat-fee" and "flat-sum" as being synonymous.

ment with the plaintiff to compensate him for services rendered in connection with a transaction between the plaintiff and Dunkin' Donuts of America, Incorporated." *Fishbein,* 107 R.I. at 673, 270 A.2d at 510. In order to decide the ultimate issue of whether the action was barred by the Statute of Frauds, the Superior Court had focused on whether the services performed by the defendant for the plaintiff were those of a broker or a finder. *Id.* at 675, 270 A.2d at 511. This Court quoted the following language from the trial justice's decision:

> " 'The Court finds that on all of the evidence that this defendant was a finder. * * * The defendant was *not involved in the transfer of the real estate per se* because Dunkin' Donuts had options on those parcels before the defendant even became involved so that the Court finds that *Section 9–1–4* is not applicable in the circumstances, no writing is required, and the Statute of Frauds is inapplicable.' " *Id.* at 676, 270 A.2d at 512 (first emphasis added).

After quoting those findings by the Superior Court, this Court stated that it did "not think it necessary in the circumstances of this case to define the term 'finder.' " *Id.* This Court went on to state that it was "[c]learly implicit" that the trial justice had found that the plaintiff had agreed to pay the defendant "for services rendered in bringing [the] plaintiff together with representatives of Dunkin' Donuts * * *." *Id.* This Court ultimately affirmed the judgment of the Superior Court and held that the agreement between the parties was not a brokerage agreement, but rather "was an agreement to pay [the] defendant specified amounts for his services in seeking out and bringing [the] plaintiff and Dunkin' Donuts together, so that they might *negotiate a contract involving the franchising of the two outlets.*"

*Id.* at 676, 679, 270 A.2d at 512, 513 (emphasis added). In addition, the Court later in the opinion found no error in the trial justice's acceptance of the defendant's characterization of the alleged agreement at issue as being one relating to a "particular business opportunity." *Id.* at 676, 678, 270 A.2d at 512, 513. Since this Court upheld the findings of the trial justice to the effect that "[t]he defendant was not involved in the transfer of real estate *per se,*" it affirmed the trial justice's ruling that the Statute of Frauds was not applicable to the "deal" at issue. *See id.* at 676, 679, 270 A.2d at 512, 513.

After carefully considering the language of the *Fishbein* case, we are unable to perceive how the Court's holding in that case supports the contention made by plaintiff in the case at bar—*viz.,* that the Statute of Frauds does not apply to a finder's fee. Although the Court did characterize the question before it in the *Fishbein* case as being whether the defendant was acting as a finder or a broker, the Court explicitly stated that, "in the circumstances of [that] case," it did not consider it necessary to define the term "finder;" therefore, the Court never defined the distinction between the two terms. *See Fishbein,* 107 R.I. at 675, 676, 270 A.2d at 511, 512. Instead, the Court focused on the fact that the contract entered into fell outside the parameters of what constitutes a real estate transaction and in actuality involved a "business opportunity" between an investor and a franchising corporation. *See id.* at 676, 270 A.2d at 512. Indeed, we consider the reasoning of this Court in *Fishbein* to be supportive of defendants' contention that, in determining the applicability of subsection 6 of the Statute of Frauds, *it is the nature of the underlying transaction* that is determinative—and not whether the person attempting to enforce

the agreement is a finder or a broker.[4]

We are not unmindful of the fact that in *Bottomley*, 121 R.I. at 404, 399 A.2d at 487–88, this Court drew a distinction between a broker and a finder. Significantly, however, that distinction was drawn with respect to whether or not a "seller of businesses"[5] was required to be licensed under the real estate broker licensing statute and *not* with respect to the applicability *vel non* of the Statute of Frauds. *See id.* at 404–05, 399 A.2d at 487–88.

In *Bottomley*, the defendant appealed from a judgment for the plaintiff in a *quantum meruit* action, in which the plaintiff had sought "a finder's fee in connection with the sale of a nursing home." *Bottomley*, 121 R.I. at 401, 399 A.2d at 486. On appeal, the defendant raised several issues. *Id.* at 402, 399 A.2d at 487. This Court first examined the defendant's claim that the plaintiff's failure to hold a real estate broker's license barred his recovery, *see id.* at 402–03, 399 A.2d at 487; it was at that point in its analysis that the Court drew "a line of demarcation between a finder and a broker." *Id.* at 404, 399 A.2d at 488. In elaborating on the distinction between the two terms, the Court stated that "a finder finds, introduces, and brings the parties to a transaction together," but does not become involved in the actual negotiations leading up to the eventual transaction or in the consummation of the deal—which activities stand in sharp contrast to those of a broker, who "attempts to bring the parties to agreement on his principal's terms." *Id.* The Court ultimately held that the plaintiff had acted as a finder and, therefore, was not required to hold a license. *Id.* at 404, 399 A.2d at

487–88; *see also* Arthur R. Gaudio, *Real Estate Brokerage Law* § 22 at 26 (1987) ("An anomalous exception to the licensing requirement which continues in some states is the so-called 'finders' exception."); Karen Colby Weiner, *Broker/Finder: Can You Collect?*, 59 Mich. Bar J. 330, 332 (1980) (noting that "[t]he rule espoused" by this Court in *Bottomley* was the "recognition of a finder's exception to a licensing requirement for real estate brokers").

Notably, in addressing the second issue in *Bottomley*, 121 R.I. at 403, 399 A.2d at 487, which concerned the applicability of the Statute of Frauds, this Court focused on the trial justice's finding "that the transaction was essentially the sale of a business;" and, in that context, this Court made no mention of the finder/broker distinction. *Id.* at 405, 399 A.2d at 488. The Court instead discussed the terms of the agreement, which reflected the fact that the transaction at bottom constituted the sale of a business—and not "the sale of [an] interest in real estate." *See* § 9-1-4; *Bottomley*, 121 R.I. at 403, 399 A.2d at 488. The Court noted that the price was negotiated "on a per-bed basis;" that a condition of the sale of the nursing home was the obtaining of all of the "licensing necessary to the operation of a nursing home;" and that only a portion of the total purchase price "was allocated to real estate." *Bottomley*, 121 R.I. at 405, 399 A.2d at 488. The Court ultimately held that there was "no merit" to the contention that the Statute of Frauds barred the suit. *Id.* at 404–05, 399 A.2d at 488.

■ After a thorough review of this Court's analysis in *Bottomley*, we again

---

4. *See Alford v. Raschiatore*, 163 Pa.Super. 635, 63 A.2d 366, 368 (1949) ("[I]n probably the bulk of real estate transactions conducted by real estate agents or brokers, the agent's part amounts to little more than finding and introducing to a party who is ready and will-

ing to sell, a prospect who is ready, willing and able to buy.").

5. *Bottomley v. Coffin*, 121 R.I. 399, 401, 399 A.2d 485, 486 (1979).

reiterate our agreement with defendants' contention that *it is the nature of the transaction* that is determinative as to whether or not subsection 6 of the Statute of Frauds applies. *See Shinberg v. Bruk,* 875 F.2d 973, 978 (1st Cir.1989) (noting that, in *Bottomley,* this Court "upheld the trial court's finding that * * * the transaction was primarily the sale of a business" and that "therefore the defense based on the Statute of Frauds and Rhode Island's broker's licensing statute did not apply"); 12 Am.Jur.2d *Brokers* § 70 at 673 (2009) ("[A] statute also may be applied broadly to any agreement requiring compensation for brokering real estate, including a finder's agreement, and not just to contracts employing brokers to purchase or sell real estate for compensation."); *see also Machan Hampshire Properties, Inc. v. Western Real Estate & Development Co.,* 779 P.2d 230, 234 (Utah Ct.App.1989) (stating that that state's statute of frauds "applies broadly to agreements requiring compensation for brokering real estate, including finder's agreements, and not just to contracts employing brokers to purchase or sell real estate for compensation" and that its statute was "intended to protect property owners from fraudulent and fictitious claims for commissions").

Lastly, we turn to *Brochu v. Santis,* 939 A.2d 449 (R.I.2008). In *Brochu,* the Court was once again faced with a party (the plaintiff in that case) seeking compensation for the services that he allegedly performed in connection with the sale of property. *Id.* at 451. On appeal, the plaintiff argued that the trial justice had erred when she granted summary judgment in the defendant's favor; the plaintiff contended that the trial justice erroneously rejected the plaintiff's position that "an oral contract was formed by the parties that provided for consideration in the form of a finder's fee and not a traditional real estate commission." *Id.* at 452. As in *Fishbein,* the Court in *Brochu* expressly declined to focus on the distinction between a finder and a broker with respect to a finder's fee or a commission. *Brochu,* 939 A.2d at 453 ("[W]e need not dwell on the distinction between a finder's fee and a commission * * *."). The Court held that, at most, the transaction at issue reflected an agreement to pay a commission, and that, therefore, the oral agreement was unenforceable due to its failure to comply with the Statute of Frauds. *Id.*

▉ After a review of our jurisprudence with respect to the distinction between a finder and a broker in relation to the applicability of subsection 6 of the Statute of Frauds, we find ourselves to be in agreement with the opinion of the Court of Appeals of Iowa in *Buckingham v. Stille,* 379 N.W.2d 30 (Iowa Ct.App.1985), wherein it sagaciously commented as follows:

> "The nature of real estate transactions, whether they involve brokers or finders, is such that unfounded and multiple claims for commissions are frequently asserted. * * * [W]e are not willing to allow persons to avoid the writing requirement simply by characterizing themselves as 'finders' rather than 'brokers.' To do so would seriously undermine the intent of the [rule drafters], as well as the effectiveness of the rule." *Id.* at 33.[6]

---

6. *See Peacock Realty Co. v. E. Thomas Crandall Farm, Inc.,* 108 R.I. 593, 596, 278 A.2d 405, 407 (1971) (recognizing that, since the enactment of the Statute of Frauds, "the decisions of this [C]ourt have recognized that the purpose underlying the sixth clause of the statute is to protect against fraudulent claims for services"); *see also Hubbell Commercial Brokers, L.C. v. Fountain Three,* 652 N.W.2d 151, 157 (Iowa 2002) ("We recognize our court of appeals [in *Buckingham*] has expanded the scope of rule 1.23 beyond con-

We therefore hold that the Statute of Frauds does not draw a distinction between a broker and a finder and that any person or entity seeking a commission upon the sale of any interest in real estate must have evidence of that agreement in writing, signed by the party to be charged or by some other lawfully authorized person.[7] *See* § 9–1–4.

## B

### The Use of the Word "Commission" in the Statute of Frauds

 It is a well-established principle of statutory interpretation that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Planned Environments Management Corp.*, 966 A.2d at 121 (internal quotation marks omitted); *see also Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I.2011); *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I.2011); *Sidell v. Sidell*, 18 A.3d 499, 504 (R.I.2011).

In reviewing the language of a statute, "our ultimate goal is to give effect to the General Assembly's intent," and we have repeatedly observed that "[t]he plain statutory language is the best indicator of [such] intent." *DeMarco*, 26 A.3d at 616 (first alteration in original) (internal quotation marks omitted); *Mullowney*, 943 A.2d at 1034; *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003) ("The best evidence of [legislative] intent can be found in the plain language used in the statute."). It follows that, "when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." *In re Harrison*, 992 A.2d 990, 994 (R.I.2010) (internal quotation marks omitted); *see also Planned Environments Management Corp.*, 966 A.2d at 122; *Marsocci v. Marsocci*, 911 A.2d 690, 696 (R.I.2006).

 The term "commission" as utilized in subsection 6 of the Statute of Frauds (§ 9–1–4) is the next focus of our inquiry. The Statute of Frauds does not define the term "commission." When a statute does not define a word, it is our practice to

---

tracts between brokers and sellers to include finder fee contracts. Yet, this decision was based largely on the similarities between the services of a finders broker and a seller's broker and the purpose of the rule. We have recognized that the purpose of rule 1.23 is to protect the public, standardize the practices in the real estate business, and prevent fraud. These purposes apply equally to brokers who find sellers for buyers as well as brokers who find buyers for sellers." (citations omitted)); *Stewart v. Sisson*, 766 N.W.2d 800, 804 (Iowa Ct.App.2009) (stating that the language from *Buckingham* that is quoted in the text sets forth the "rationale for requiring a written contract" and noting that "[t]he rule requiring written listing contracts is analogous to the statute of frauds applicable to contracts" (internal quotation marks omitted)).

7. *See Minichiello v. Royal Business Funds Corp.*, 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793, 796 (1966) ("If, indeed, there is

any definite distinction between finders and brokers, it would probably be in the quantity of services rendered by each. It is possible for a finder to accomplish his service by making only two phone calls and, if the parties later conclude a deal, he is entitled to his commission. But the difficulty in proving services ordinarily varies in an inverse proportion to the amount of services rendered. Thus, to include brokers and to exclude finders from the statute is to permit oral testimony in the very cases which are the least susceptible to oral proof."). *See generally* 72 Am.Jur.2d *Statute of Frauds* § 49 at 582 (2001) ("More directly, the purpose of the statute of frauds is to prevent the enforcement of oral contracts relating to land. Hence, the general effect of such provisions is to *require all contracts concerning real estate to be in writing*." (emphasis added) (footnote omitted)).

329

employ the common meaning of the word as provided by recognized dictionaries. *See In re Proposed Town of New Shoreham Project*, 25 A.3d 482, 513 (R.I.2011); *see also Planned Environments Management Corp.*, 966 A.2d at 123; *Defenders of Animals, Inc. v. Department of Environmental Management*, 553 A.2d 541, 543 (R.I.1989). *See generally* 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutes and Statutory Construction* § 47:28 at 468 (7th ed. 2007) ("Dictionaries * * * provide a useful starting point to determine what statutory terms mean * * *."). The American Heritage Dictionary of the English Language defines the term "commission" (in the pertinent definitional category) as meaning "[a] fee *or* percentage allowed to a sales representative or an agent for services rendered." The American Heritage Dictionary of the English Language 371 (4th ed.2009) (emphasis added); *see* William P. Statsky et al., West's Legal Desk Reference 57 (1991) (defining "Commission" as meaning "[c]ompensation *or* fee, often based on a percentage of designated amounts involved in the transaction(s)" (emphasis added)); *see also* Black's Law Dictionary 306 (9th ed.2009) (defining "commission" (in the pertinent definitional category) as meaning "*[a] fee* paid to an agent or employee for a particular transaction, usu. as a percentage of the money received from the transaction" (emphasis added)); The Random House Dictionary of the English Language 412 (2d. ed.1987) (defining "commission" (in the pertinent definitional category) as meaning "a sum *or* percentage allowed to agents, sales representatives, etc., for their services" (emphasis added)).

◼ Accordingly, taking into account the just-quoted dictionary definitions (none

of which defines "commission" as *exclusively* relating to percentage-based compensation), it is our view that the term "commission" as utilized in subsection 6 of the Statute of Frauds encompasses any type of payment, whether it be a flat-sum commission or a percentage-based commission. *See* § 9–1–4; *see also* Barlow Burke, Jr., *Law of Real Estate Brokers* § 12.05 at 12–55 (3d ed. 2009) ("A 'finder's fee' is a kind of *commission* as to which there is no percentage fixed by custom." (emphasis added)).

We next turn to what we consider to be compelling principles of public policy.

### C

### Considerations of Public Policy

◼ The purpose of subsection 6 of the Statute of Frauds is to "protect[ ] [the public] against the assertion of unfounded claims." *Brochu*, 939 A.2d at 453–54 (internal quotation marks omitted); *see also Heyman*, 102 R.I. at 111, 228 A.2d at 582. We are of the same mind as the Supreme Court of Tennessee, which very recently observed as follows:

"The Statute of Frauds * * * fosters certainty in transactions by ensuring that contract formation is not based upon loose statements or innuendos long after witnesses have become unavailable or when memories of the precise agreement have been dimmed by the passage of time." *Waddle v. Elrod*, [367 S.W.3d 217] 2012 WL 1406451, *4 (Tenn. April 24, 2012) (internal quotation marks omitted).[8]

And, we note that, "[w]hen a law has been enacted for the purpose of protection against the assertion of unfounded claims, it should be so construed as to effect the

---

8. *See Smith v. Boyd*, 553 A.2d 131, 132 (R.I. 1989) ("Rhode Island's statute of frauds * * * is to guard against perjury by one claiming under an alleged agreement."); *see also Bourdon's, Inc. v. Ecin Industries, Inc.*, 704 A.2d 747, 755 (R.I.1997).

object of the enactment." *Heyman*, 102 R.I. at 109, 228 A.2d at 581 (internal quotation marks omitted).[9]

■ Our holding today furthers the public-protection purpose of the Statute of Frauds by requiring any person or entity who seeks to recover a flat-sum commission or a percentage-based commission upon the sale of any interest in real estate to have the relevant promise or agreement in writing (or some note or memorandum thereof) "signed by the party to be charged therewith, or by some other person by him or her thereunto lawfully authorized."[10] *See* § 9–1–4; *see also* Gaudio, § 108 at 46 (Supp.1997) ("The fact that an agreement might be argued to provide for a finder's fee rather than a brokerage commission should not prevent the application of the writing requirement. The reason for enacting provisions of this sort is to protect the general public from precisely these types of oral agreements."). Therefore, it is our view that the instant case falls within subsection 6 of the Statute of Frauds.

We are convinced that this opinion's dispelling of whatever uncertainty there may have been in some quarters as to the reach of subsection 6 of the Statute of Frauds is entirely consistent with the purpose of that venerable enactment—*viz.*, "to protect the public against unfounded claims." *See*

*Heyman*, 102 R.I. at 111, 228 A.2d at 582; *see also Featherman v. Kennedy*, 122 Mont. 256, 200 P.2d 243, 244–45 (1948) ("The salutary effect of such a statute which is clear, unambiguous, and which has been widely publicized among persons engaged in real estate transactions, should not be limited or restricted by strained judicial construction to defeat the purpose of the people as expressed through their [legislature]." (internal quotation marks omitted)). We are further convinced that "[t]o hold otherwise would reopen the floodgates of litigation which were closed when clause sixth became law." *See Dooley v. Lachut*, 103 R.I. 21, 25, 234 A.2d 366, 368 (1967).

## IV

### Conclusion

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record in this case may be returned to that tribunal.

Justice GOLDBERG did not participate.

9. We are mindful that "statutes should not be construed to achieve meaningless or absurd results." *Ryan v. City of Providence*, 11 A.3d 68, 71 (R.I.2011) (internal quotation marks omitted); *see also Brennan v. Kirby*, 529 A.2d 633, 637 (R.I.1987) ("A statute or enactment may not be construed in a way that would attribute to the Legislature an intent that would result in absurdities or would defeat the underlying purpose of the enactment * * *."). *See generally* 73 Am.Jur.2d *Statute of Frauds* § 426 at 104 (2001) ("The statute of frauds should receive a reasonable interpretation with the end of preventing fraud in view.

It is said, in this respect, that to apply the statute of frauds in such a manner as to promote and encourage fraud would be to defeat the clear and unambiguous intent of the legislature in its enactment." (footnote omitted)).

10. We note that our holding forecloses not only plaintiff's breach of contract claim, but also its fraud and unjust enrichment claims. *See generally Brochu v. Santis*, 939 A.2d 449, 453–54 (R.I.2008); *Metro Properties, Inc. v. Yatsko*, 763 A.2d 617, 620–21 (R.I.2000).