James **MULLOWNEY** et al.

v.

William **MASOPUST** et al.

No. 2007–34–Appeal.

Supreme Court of Rhode Island.

March 17, 2008.

Peter Regan, Newport, for Plaintiffs.

Kevin P. Gavin, Portsmouth, for Defendants.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The defendants, William Masopust, Joseph Salafia, Karl Olsen, and Robert Go-

eldner, in their capacities as members of the board of directors of Newport On–Shore Marina, Inc., and that corporate entity itself, appeal to this Court from the entry of summary judgment in favor of the plaintiffs, James Mullowney, Michele Mullowney, Pino Lotti, Robert Horgan, John Shekarchi, Rick Johnston, Daniel Sumner, Vahan Yaylaian, and Robert F. Felhaber, the latter in his capacity as trustee of the Robert F. Felhaber Revocable Trust. The defendants assert that the Superior Court's ruling as to the illegality of one of the provisions of their condominium declaration was erroneous; they also contend that the hearing justice abused his discretion when he granted the plaintiffs' motion for attorneys' fees.

For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Travel

In 1985, the Newport On–Shore Condominium was created by the Newport On–Shore Limited Partnership by means of a declaration that was recorded in the Newport Land Evidence Records. In 1987, a fifth amendment to the declaration was recorded, thereby creating the "Marina Phase" of the condominium. This phase consisted of sixty-five condominium units and sixty-five slips. The members of Newport On–Shore Marina, Inc., a Rhode Island corporation, own "Marina Units" in the Newport On–Shore Condominium. These marina units are sixty-five individual lockers that are used for the storage of boat equipment; appurtenant to each marina unit is the right to use a specific boat slip at the marina. Each of the sixty-five units constitutes an equal 0.2429 percent allocated interest in the common elements of the Newport On–Shore Condominium.

The Newport On–Shore Marina Association (the Association), comprised of all ma-

rina unit owners, operates the marina through a board of directors and officers. According to the Marina Declaration, Article VI, "[a]ll Marina Unit Owners shall pay Common Expenses in the form of a 'Maintenance Fee' to the Association or its designee for each Marina Unit owned." Until 2005, when the board of directors decided to change the method of assessment, all marina unit owners paid an equal share of the common expenses—which meant that each paid 1/65th of the Association's overall budget.

James Mullowney, one of the plaintiffs, testified that he had been a condominium owner since 1999 and that, as an owner, he had the right to use a 110–foot slip. At the annual Association meeting on July 31, 2002, Mr. Mullowney was appointed to a committee assembled for the purpose of reviewing the bylaws of the Association. Mr. Mullowney testified that the committee focused in a particular manner on changing the method of assessment to a linear-foot basis. According to the testimony of Mr. Mullowney, before the change was made the committee received an opinion from a lawyer concerning the contemplated change; although it was never reduced to writing, that legal opinion[1] advised the committee that such a change would require a 100 percent vote of approval by the membership.

With respect to calendar years 2005 and 2006, the board of directors changed the method of assessment and began to allocate fees based on the length of each owner's boat slip; this represented a change from the former method of assessment, whereby fees were assessed equally to each of the sixty-five condominiums. The board assessed the fees at $50 per linear

foot, reasoning that owners with larger slips received proportionately greater benefits from each dollar required to maintain and operate the marina.

On May 12, 2005, plaintiffs commenced this action against defendants, seeking injunctive relief and a declaratory judgment. In due course, plaintiffs and defendants filed cross-motions for summary judgment.

The issue before the Superior Court at the hearing on the motions for summary judgment was whether or not the board of directors' decision to change the method of assessment from the equal-shares formula to the footage-based formula violated certain provisions of the Rhode Island Condominium Act, G.L. 1956 chapter 36.1 of title 34 (Condominium Act).[2]

On August 11, 2006, the Superior Court granted plaintiffs' motion for summary judgment after finding that the board of directors' having discretion to change the method of assessing common expenses violated the plain language of § 34–36.1–3.15(c). The hearing justice stated:

"In § 34–36.1–3.15(c), the legislature authorized certain exceptions to the assessment of common expenses, but used compulsory language. A plain reading of the statute reveals that in order for the exceptions in § 34–36.1–3.15(c) to apply, the declaration must *require* a different assessment method. The Marina Declaration does not require the new slip size-based assessment."

The hearing justice stated that allowing the board of directors to have discretion to change the assessment method with respect to any particular budget item whenever the board of directors determined that such item related to a char-

---

1. It is unclear from the record just how definitive or unequivocal was the referenced legal opinion.

2. The relevant provisions of the Rhode Island Condominium Act are quoted and discussed *infra*.

acteristic of a particular unit would "practically abrogate the specifically enumerated exceptions to the assessment of common expenses" in the statute. The hearing justice further stated that allowing the board of directors to have discretionary authority with respect to this matter would contravene the consumer protection purpose of the statute.

Final judgment was entered on September 15, 2006, and defendants filed a notice of appeal on October 2, 2006.

Following the entry of summary judgment, plaintiffs moved for an award of attorneys' fees in accordance with § 34–36.1–4.17, which permits the awarding of attorneys' fees "in an appropriate case" in which a party has failed to comply with the Condominium Act. On January 16, 2007, the Superior Court granted plaintiffs' motion for attorneys' fees and awarded them fees in the amount of $26,642.50. The defendants timely appealed, and this Court consolidated the two appeals on June 19, 2007.

On appeal, defendants contend that the hearing justice misinterpreted the Condominium Act, and they maintain that Article VI of the Marina Declaration does not violate § 34–36.1–3.15 of the Act. The defendants furthermore assert that, because the owners of larger slips receive a proportionately greater benefit from the money expended to maintain and operate the marina, the more equitable allocation method would be one based on slip size.

The defendants additionally maintain that, even if this Court determines that Article VI of the Marina Declaration and the 2005 and 2006 size-based assessments violate the Condominium Act, the hearing justice's award of attorneys' fees should nevertheless be reversed as being an abuse of discretion. The defendants assert that "there was no reasonable basis" for the hearing justice to conclude that defendants acted in bad faith.

## Standard of Review

■ This Court reviews a grant of summary judgment on a *de novo* basis. *Franklin Grove Corp. v. Drexel,* 936 A.2d 1272, 1275 (R.I.2007). Employing the same standards that the hearing justice employed, this Court will uphold an entry of summary judgment if there are no questions of material fact and the movant is entitled to judgment as a matter of law. *Lacey v. Reitsma,* 899 A.2d 455, 457 (R.I. 2006); *see also Ruggiero v. City of Providence,* 893 A.2d 235, 237 (R.I.2006).

■ The material facts pertinent to this case are undisputed, and the issue before us is one of statutory construction. This Court engages in *de novo* review of questions of statutory interpretation. *Interstate Navigation Co. v. Division of Public Utilities and Carriers of Rhode Island,* 824 A.2d 1282, 1287 (R.I.2003); *see also State v. Fritz,* 801 A.2d 679, 682 (R.I.2002).

■ With respect to the issue of attorneys' fees, this Court will uphold a presiding judicial officer's award of attorneys' fees unless such award constitutes an abuse of discretion. *Rhode Island Insurers' Insolvency Fund v. Leviton Manufacturing Co.,* 763 A.2d 590, 598 (R.I.2000).

## Analysis

I. The Rhode Island Condominium Act

Adopted in 1982, chapter 36.1 of title 34, as enacted by P.L. 1982, ch. 329, § 2, is known as the Rhode Island Condominium Act (Condominium Act). The Condominium Act was made applicable to any condominium created in Rhode Island after July 1, 1982. *See* § 34–36.1–1.02(a)(1); *see also America Condominium Association, Inc. v. IDC, Inc.,* 844 A.2d 117, 127 (R.I.2004). This Court has previously observed that

the Condominium Act " 'contains a strong consumer protection flavor'," and has remarked upon the statute's "clear direction" that, except where it expressly provides for the possibility, provisions of the statute are not to be modified by agreement. *America Condominium Association, Inc. v. IDC, Inc.*, 870 A.2d 434, 437 (R.I.2005).

In view of the fact that the Newport On–Shore Condominium was created in 1985, it unquestionably falls within the purview of the Condominium Act. This case requires us to analyze whether the provision of the Newport On–Shore Condominium's declaration that allows the board of directors to alter the method of fee assessment contravenes the mandates of the Condominium Act.

The allocation of common expenses is addressed in § 34–36.1–2.07(a) of the Condominium Act. It provides as follows:

> "The declaration shall allocate a fraction or percentage of undivided interests in the common elements and in the common expenses of the association, and a portion of the votes in the association, to each unit * * * and state the formulas used to establish those allocations."

Section 34–36.1–3.15 describes the method of assessment for common expenses and provides in pertinent part:

> "(b)(1) Except for assessments under subsections (c)—(e), all common expenses *must be assessed against all the units in accordance with the allocations set forth in the declaration* pursuant to § 34–36.1–2.07(a)." (Emphasis added.)

The exceptions that are set forth in subsection (c) of § 34–36.1–3.15 [3] stipulate that, *to the extent required by the declaration,* the distribution of certain costs among members may be based on a meth-

od that correlates the percentage of benefits received with the percentage of costs paid.

For example, subsection (c)(1) of § 34–36.1–3.15 authorizes, *to the extent required by the declaration,* the assessment of costs for a "limited common element" against the units to which that element is assigned. The subsection allows such assessment to be made "equally, or in any other proportion that the declaration provides." *Id.* Subsection (c)(2) provides that, *to the extent required by the declaration,* "[a]ny common expense or portion thereof benefiting fewer than all of the units must be assessed exclusively against the units benefited[.]" Subsection (c)(3) provides for a similar assessment for disproportionate benefit gained from insurance.

The plaintiffs argue that a particular provision of the Marina Declaration, Article VI, violates the mandates of the just-cited statutory provisions. Article VI of the Marina Declaration delineates the maintenance fees and other assessments, providing in relevant part as follows:

> "The Maintenance Fee for each Marina Unit shall be determined by applying a fraction, the numerator of which is the number of Marina Units owned by a particular Marina Owner and the denominator of which is the total number of Marina Units in the Marina as of the first day of each fiscal year of the Marina Association, to the total of all Common Expenses * * * and shall then be assessed against and prorated among all of the Marina Unit Owners in proportion to the number of Marina Units owned. *Provided, however, that the Board of Directors may, in its reasonable discretion, allocate between Marina Slips of*

---

**3.** Subsections (d) and (e) of G.L. 1956 § 34–36.1–3.15 are not relevant to the issues involved in the instant case.

*differing size those budget items which it determines are reasonably related to the size of a slip.* * * * Such an allocation, if adopted, will result in Marina Unit Owners being assessed different Maintenance Fees based on the size of slip used." (Emphasis added.)

■ Mindful of the fact that this Court "is the final arbiter with respect to questions of statutory construction," we shall now proceed to employ our long-established procedure for interpreting statutes. *New England Expedition–Providence, LLC v. City of Providence,* 773 A.2d 259, 263 (R.I.2001). In analyzing a statute comprised of language that is clear and unambiguous, this Court applies the statute as written by giving the words their plain and ordinary meaning. *See Chambers v. Ormiston,* 935 A.2d 956, 960 (R.I.2007); *see also State v. DiCicco,* 707 A.2d 251, 253 (R.I.1998). When this Court must "decide what the General Assembly intended when it enacted a particular statute, we always begin with the principle that the plain statutory language is the best indicator of legislative intent." *Chambers,* 935 A.2d at 961 (internal quotation marks omitted).

■ The clear language of the Condominium Act unambiguously states that the differential method of assessing the expenses of a condominium association is permissible—but only *to the extent required by the declaration.* The declaration of Newport On–Shore Marina, Inc. *does not require* a footage-based assessment of the costs of operating the marina. Instead, the declaration provides that the maintenance fee for each marina unit "shall be determined" by dividing equally among the units the common expenses.

Later in the text of that same declaration, the board of directors is provided with the discretion to allocate, based on slip size rather than ownership percentage, certain budgetary items which it determines are related to slip size.

■ In no sense can we conclude that such language, which vests the board of directors with discretion to change the method of assessing the marina's costs, requires that a footage-based method of assessment be employed. As such, Article VI's grant of discretion in that regard clearly violates the crucial criterion set forth in § 34–36.1–3.15. We agree with the hearing justice's observation that "the Defendants overlook the use of the term 'required' in the introductory statement of § 34–36.1–3.15(c) * * *." We further agree with the hearing justice's statutory construction, in which he stated that "[a] plain reading of the statute reveals that in order for the exceptions * * * to apply, the declaration must *require* a different assessment method."

We therefore conclude that the board of directors' modification of the method of assessing common expenses violated the plain language of the Condominium Act. Because Article VI of the Marina Declaration here at issue contravenes the express mandates of the Rhode Island Condominium Act, the decision of the hearing justice to grant summary judgment in favor of plaintiffs must be affirmed.

## II. Attorneys' Fees

■ Section 34–36.1–4.17 authorizes the trial court, "in an appropriate case," to award reasonable attorneys' fees for failure to comply with the Condominium Act.[4] The award of attorneys' fees,

4. It is important to note that the statutory language in the above-cited attorneys' fees provision vests significantly broader discretion in the presiding judicial officer than is the case with some other statutes that authorize the awarding of attorneys' fees. *See, e.g.,*

when statutorily or contractually authorized, is a matter confided to the sound discretion of the presiding judicial officer. *Women's Development Corp. v. City of Central Falls,* 764 A.2d 151, 162 (R.I.2001). Exercising the discretion that the statute vests in him, the hearing justice in this case found that defendants acted "at least unreasonably" and caused plaintiffs to "suffer the expense of substantial and complex litigation in order to vindicate their rights."

We have reviewed the record, and we perceive therein no reason for concluding that the hearing justice abused his discretion when he found that this was an "appropriate case" for an award of attorneys' fees under the statute. The record sufficiently supports the hearing justice's conclusion that defendants acted "unreasonably,"[5] and therefore we shall not undo his award of attorneys' fees.[6]

### Conclusion

For the reasons delineated in this opinion, the defendants' appeal is denied and

---

dismissed. The judgment appealed from is affirmed, and the papers in the case may be remanded to the Superior Court.

Although Justice Goldberg was present at the oral argument, she thereafter recused.

---

G.L. 1956 § 9–1–45(1) (authorizing the award of attorneys' fees to the prevailing party in an action "arising from a breach of contract" when the trial justice "[f]inds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party"); G.L. 1956 § 6–27–7(a) (mandating that a creditor who "willfully imposes a finance charge in violation of § 6–27–4" be liable for attorneys fees); G.L. 1956 § 5–38.3–6(c) (requiring award of attorneys' fees when the court issues a permanent injunction under the Motor Vehicle Repair Shop Act); G.L. 1956 § 6A–2.1–108 (requiring the award of attorneys fees in some instances wherein the court finds unconscionability in consumer leases).

5. We note that the hearing justice's finding was phrased in the disjunctive; he found that defendants had "acted in bad faith *or at least unreasonably.*" (Emphasis added.)

Because unreasonable action would, in our view, be a sufficient predicate for making this case an appropriate one for the award of

---

attorneys' fees, we need not and do not decide whether there was any action in bad faith.

6. Since a specific statute permits the award of attorneys' fees in this instance, we are not here confronted with any deviation from what is known as the "American Rule" with respect to awards of attorneys' fees. *See Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 717, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) ("The rule * * * has long been that [attorneys'] fees are not ordinarily recoverable in the absence of a statute or enforceable contract providing therefor."); *see also Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) ("In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser."); *Florida Patient's Compensation Fund v. Rowe,* 472 So.2d 1145, 1147–48 (Fla. 1985) (describing the nature and the origin of both the "English Rule" and the "American Rule"); *see generally* 22 Am.Jur.2d *Damages* § 430 at 384–85 (2003).