Tijani A. OLAMUYIWA

v.

ZEBRA ATLANTEK, INC., et al.

No. 2010–14–Appeal.

Supreme Court of Rhode Island.

June 14, 2012.

Robert E. Savage, Esq., Warwick, for Plaintiff.

Douglas Darch, Esq., Pro Hac Vice, for Defendant.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice ROBINSON, for the Court.

The plaintiff, Tijani A. Olamuyiwa, appeals from a Superior Court grant of summary judgment in favor of the defendants—*viz.*, Zebra Atlantek, Inc. (Zebra Atlantek), John Conway, Francis Delillo, Karen Vaillancourt, Roger Sevigny, and Paul Follett.[1] On appeal, the plaintiff con-

---

1. The persons who were named as defendants in addition to the corporate defendant were, at some point during the course of plaintiff's employment history, employees of Zebra At-

lantek. We note that their names are spelled in different ways at different points in the record; for the sake of simplicity, we shall utilize the spelling used in the case caption of

tends that certain provisions of the Rhode Island Fair Employment Practices Act (FEPA)[2] render the release document which the plaintiff executed as part of his severance package void as it applied to his pending FEPA claims.

This case came before the Supreme Court for oral argument pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After reviewing the record and considering the written and oral submissions of the parties, we are satisfied that cause has not been shown and that this appeal may be resolved without further briefing or argument.

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Facts and Travel

In December of 2001, plaintiff, an African–American male of Nigerian origin, was hired by Atlantek, Inc. as a technician.[3] When Zebra Technologies Corporation later acquired Atlantek, Inc., plaintiff remained in his position.

Almost three years later, plaintiff was notified by a letter dated October 1, 2004 from Zebra Atlantek that Zebra Technologies Corporation would be laying off em-

ployees and that the layoff was "expected to be permanent in nature;" the letter also stated that the layoff of plaintiff was "expected to occur in February 2005."

On January 10, 2005, plaintiff filed a charge of discrimination with the Rhode Island Commission for Human Rights (Commission) against the previously named defendants; in that charge, he alleged the existence of "discriminatory terms and conditions of employment on the basis of * * * race * * * and ancestral origin * * * including harassment and retaliation." The charge of discrimination included a statement that plaintiff was represented by an attorney, and it also set forth the attorney's contact information. On or about January 28, 2005, Zebra Atlantek received a copy of the charge of discrimination.

Although plaintiff had originally been notified that the layoff was expected to occur in February of 2005, plaintiff was not actually laid off until April 29, 2005.[4] On that date, Zebra Atlantek held a meeting with the employees whose positions were being "phased out and terminated," which meeting was attended by plaintiff. At the meeting, each employee whose position was being eliminated received two documents: the first document was a "Letter Agreement" setting forth the employee's "separation benefits;" the second document was entitled "Confidential Waiv-

---

the amended complaint (wherein plaintiff stated that one of his reasons for amending the complaint was to correct the misspelled names of two of the defendants).

We further note that the motion for summary judgment was brought solely by Zebra Atlantek; however, the judgment from which plaintiff appeals was granted in favor of all of the defendants.

**2.** The Rhode Island Fair Employment Practices Act (FEPA) is codified at G.L. 1956 chapter 5 of title 28.

**3.** At his deposition, plaintiff testified that he had previously worked at Atlantek, Inc. as an assembler, but that he left that employment in October of 1999 because he had to undergo surgery.

**4.** At the hearing in Superior Court on the motion for summary judgment, counsel for Zebra Atlantek stated that plaintiff's position was terminated at a later date than was anticipated because the product line on which plaintiff was working was still in existence and had not yet been phased out.

er and Agreement and General Release" (the release document). Under the terms of the Letter Agreement, the employee's receipt of the separation benefits was "contingent on," *inter alia,* the receipt by Zebra Atlantek of a signed copy of the release document. The amount of money that plaintiff was to receive as separation benefits was his "base pay rate of $492.00 * * * weekly, for a period of six (6) weeks."

The release document included provisions (1) releasing Zebra Atlantek and its present and former employees (*inter alios*) from liability for attorneys' fees and (2) discharging all claims which the employee "may have against" those parties—including but not limited to any claims under the FEPA. Specifically, the release document reads in pertinent part as follows:

"2.1 By signing this Waiver/Release, the Employee permanently waives, releases and discharges each and every one of the Released Parties of and from any and all claims, demands, actions, expenses and liabilities of any kind, including but not limited to attorneys' fees, which the Employee may have against them. * * *

"2.2 The Employee's waiver, release and discharge of claims includes, but is not limited to, any claims arising in any way from [Employee's] employment with the Employer or the termination of his employment. Among the claims the Employee waives, releases and discharges are the following * * *: any claims under the * * * RI State Fair Employment Practices Act, [G.L. 1956 chapter 5 of title 28]; any state law prohibiting employment discrimination or harassment * * *."

The release document also contained a revocation clause, whereby an employee was expressly permitted to revoke the terms of the release document within seven days of executing same.

Moreover, and especially pertinent to the case at hand, the Letter Agreement contained the following explicit language:

"The Employer encourages you to consult with an attorney regarding this Letter Agreement and the enclosed Waiver/Release, if you so desire."

Karen Vaillancourt, who was the Manager of Human Resources at Zebra Atlantek when the April 29, 2005 meeting took place (and who was named as a defendant in the instant case and whose deposition was taken), testified that she had "read verbatim the whole [L]etter [A]greement" to those in attendance at the meeting on April 29, 2005; she further testified that she had read to the attendees "almost the whole letter on the Confidential Waiver and Agreement and Release."[5] Ms. Vaillancourt also stated that it is her customary procedure at such meetings to "several times, indicate that [the attendees] should

---

5. Ms. Vaillancourt further testified at her deposition as follows with respect to her procedure when reviewing the release document with plaintiff:

"And what I do—and I know I do it, because I had done this many times is I make sure that when I read the first paragraph of the Confidential Waiver and Release, I stop and I always ask as I do throughout all the documents: Does anyone have any questions. Does everyone understand what I've [been] talking about and I explain to them that they would be waiving and so I get into a little explanation.

"We go down a little farther, I make sure I go through the claims waived and released section, coverage waiver and release, no admission of liability, the additional agreements and recommendations."

"* * * I mean * * * I did go through that-the employee should take this to their legal counsel if they did not understand it or did have questions that I couldn't answer."

take [the release document] to their legal counsel and have it reviewed and make sure they understand what they're signing before they sign it." However, at his deposition, plaintiff testified that Ms. Vaillancourt did not read the Letter Agreement aloud and that she "didn't read the whole [release document]" at the just-referenced meeting; he also testified that he could not recollect whether she had advised the employees to contact an attorney, but he did state that Ms. Vaillancourt had said that "[the employees] need[ed] to think about it."[6]

Ms. Vaillancourt further testified at her deposition that plaintiff not only signed the Letter Agreement at the April 29, 2005 meeting but that he also sought to submit the document to her at that time; Ms. Vaillancourt testified that she declined to accept the executed Letter Agreement from plaintiff at that time and instead told him that "it would be wise for him to take it and have his legal counsel review it."[7] Ms. Vaillancourt further testified that, approximately ten minutes later, plaintiff came to her office "with both documents signed;" she stated that she again told him that she would not accept the documents at that time and that he "really needed to have his legal counsel look at [the documents]." The plaintiff, for his part, testified that he did not sign the documents on the day of the group meeting with Ms. Vaillancourt but instead took them home.[8]

It is undisputed, however, that plaintiff did sign the documents a few days later and mailed them to Zebra Atlantek.[9] It is also undisputed that plaintiff never consulted with his attorney before signing the documents and that his attorney was not aware of the release document until a few weeks after plaintiff had executed it.

On August 30, 2005, the Commission issued a "Notice of Right to Sue" to plaintiff. Subsequently, in November of 2005, plaintiff commenced this action against defendants in the Superior Court for Washington County. In his complaint, which was later amended, plaintiff alleged that he had been discriminated against by Zebra Atlantek and the above-mentioned individual defendants on the basis of race, color, and ancestral origin in violation of the FEPA and the Rhode Island Civil Rights Act. Zebra Atlantek filed an answer to both the complaint and the amended complaint. Zebra Atlantek also filed a counterclaim for breach of contract, in which it alleged that plaintiff's filing of the lawsuit "constitute[d] a material breach" of the release document.

On February 26, 2009, Zebra Atlantek filed a motion for summary judgment, to which plaintiff objected. On June 29, 2009, a hearing was held on the motion for summary judgment. At that hearing, Zebra Atlantek contended that plaintiff had signed a valid and binding release and had thereby waived the claims which he was

---

**6.** We have explained in the text, for the sake of accuracy, the rather minor differences between plaintiff's deposition testimony and that of Ms. Vaillancourt. It should be emphasized, however, that those differences had absolutely no bearing on the rationale of the hearing justice in granting summary judgment for defendants.

**7.** At a later point in her deposition, Ms. Vaillancourt stated that plaintiff "was agitated that [she] wouldn't take the paperwork initially."

**8.** *See* footnote 6, *supra.*

**9.** Although the record is not entirely clear as to how many days the employees were given to review and return the signed documents, the record clearly indicates that, at a minimum, each employee had twenty-one days within which to sign and return said documents to Zebra Atlantek.

seeking to litigate in the Superior Court; on that basis, Zebra Atlantek requested that summary judgment be granted in its favor. In response, plaintiff contended that the FEPA requires that plaintiff's counsel had to attest "that there wasn't a waiver of attorney's fees as a condition of settlement both at the Commission and at the Superior Court;" plaintiff further contended that, since there had been no such attestation by counsel, the result was "a void settlement."

On August 28, 2009, the hearing justice issued a written decision in which she ruled (1) that, as a matter of law, the release document was "valid and binding;" and (2) that, therefore, plaintiff had "waived his claims" against Zebra Atlantek. The hearing justice reasoned that there was "nothing in FEPA that voids the Release." Moreover, the hearing justice ruled that plaintiff had "violated the terms of the Release by bringing the present action." Consequently, the hearing justice ruled that Zebra Atlantek was entitled to summary judgment dismissing all of plaintiff's claims and granting Zebra Atlantek's breach of contract counterclaim "as to liability only."

Thereafter, a judgment was entered,[10] from which plaintiff appealed, but only concerning the dismissal of three counts of his complaint and as to the grant of Zebra Atlantek's counterclaim for breach of contract.

On appeal, plaintiff contends that the Superior Court's entry of judgment in favor of defendants was contrary to law. Specifically, plaintiff argues that G.L.1956 §§ 28–5–17 and 28–5–24.1 render the re-lease document void as it applied to his pending FEPA claim.[11] The plaintiff contends that, because a waiver of all attorneys' fees was compelled as a condition of the release document, the just-referenced sections of the General Laws "*de facto* require that Plaintiffs' attorneys * * * get actual knowledge of any proposed agreement."

## II

### Standard of Review

We have often recognized the principle that "[s]ummary judgment is appropriate when, viewing the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, the court determines that there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Employers Mutual Casualty Co. v. Arbella Protection Insurance Co.*, 24 A.3d 544, 553 (R.I.2011) (alteration in original) (internal quotation marks omitted); see also *Lynch v. Spirit Rent–A–Car, Inc.*, 965 A.2d 417, 424 (R.I.2009); *Delta Airlines, Inc. v. Neary*, 785 A.2d 1123, 1126 (R.I.2001). The burden rests upon the nonmoving party "to prove the existence of a disputed issue of material fact by competent evidence; it cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions." *Hill v. National Grid*, 11 A.3d 110, 113 (R.I. 2011) (internal quotation marks omitted); see also *Horton v. Portsmouth Police Department*, 22 A.3d 1115, 1121 (R.I.2011); *Young v. Warwick Rollermagic Skating Center, Inc.*, 973 A.2d 553, 557 (R.I.2009).

---

10. An amended judgment later was entered pursuant to Rule 54(b) of the Superior Court Rules of Civil Procedure.

11. We note that plaintiff does not contend that the meaning of the release document itself is unclear. See generally *McBurney v.*

*Teixeira*, 875 A.2d 439, 443 (R.I.2005). Instead, he challenges *the validity* of the release document—and he does so as a matter of law, based on the provisions of the FEPA that are cited in the text.

We remain ever mindful, however, "that summary judgment is an extreme remedy that warrants cautious application." *Young*, 973 A.2d at 557 (internal quotation marks omitted); *see also Horton*, 22 A.3d at 1121; *Hill*, 11 A.3d at 113; *Estate of Giuliano v. Giuliano*, 949 A.2d 386, 394 (R.I.2008).

■ This Court reviews the granting of a motion for summary judgment in a *de novo* manner, applying "the same standards as did the motion justice." *Young*, 973 A.2d at 557; *see also Empire Acquisition Group, LLC v. Atlantic Mortgage Co.*, 35 A.3d 878, 882 (R.I.2012); *Horton*, 22 A.3d at 1121; *Ouch v. Khea*, 963 A.2d 630, 632 (R.I.2009).

■ Since this case requires us to engage in statutory interpretation, we also note that "questions about the meaning of statutes are reviewed *de novo* by this Court." *Planned Environments Management Corp. v. Robert*, 966 A.2d 117, 121 (R.I.2009); *see also McCain v. Town of North Providence ex rel. Lombardi*, 41 A.3d 239, 243 (R.I.2012); *Generation Realty, LLC v. Catanzaro*, 21 A.3d 253, 258 (R.I.2011).

## III

## Analysis

### A

### The Two Statutes at Issue

On appeal, plaintiff contends that the language of the FEPA (specifically the language of §§ 28–5–17(d) and 28–5–24.1(d)) renders the release document void in its application to his FEPA claims.

Section 28–5–17(d), which relates to the conciliation of charges *before the Commission*, reads as follows:

"The commission shall not enter a consent order or conciliation agreement settling claims of discrimination in an action or proceeding under this chapter unless the parties and their counsel attest that a waiver of all or substantially all attorneys' fees was not compelled as a condition of the settlement."

We consider this statutory language to be straightforward and unambiguous.

The language of § 28–5–24.1(d) is substantially similar to that of § 28–5–17(d), but it relates to actions that might be taken *by the Superior Court* rather than by the Commission. Section 28–5–24.1(d) reads as follows:

"The superior court may make orders consistent with § 28–5–24; provided, that the court shall not enter a consent order or judgment settling claims of discrimination in an action or proceeding under this chapter, unless the parties and their counsel attest that a waiver of all or substantially all attorney's fees was not compelled as a condition of the settlement."

Likewise, we perceive absolutely no ambiguity in this statutory language.

The plaintiff relies on the language of the two just-quoted statutes to contend that the attorney who represented him at the time when he signed the release document was "*de facto* require[d]" to have been provided with actual knowledge of "any proposed agreement" between plaintiff and Zebra Atlantek. In addition, plaintiff argues that, since the release document which he signed provided for the waiver of attorneys' fees, the release document was in violation of the FEPA and, therefore, was void. The plaintiff maintains that it is contrary to the intent of the FEPA to hold that the FEPA permits defendant-employers to resolve pending FEPA claims by entering into an out-of-court agreement "that is conditioned on a waiver of attorneys' fees without giving plaintiffs attorney actual notice of the

agreement." The plaintiff argues that Zebra Atlantek was able to "get around the provisions of FEPA" by having him sign "a severance agreement" providing for the waiver of attorneys' fees—which agreement served as the basis for the entry of summary judgment on Zebra Atlantek's behalf and, therefore, was "enforce[d]" by the court.

## B

### The Pertinent Principles of Statutory Construction

It is a well-established principle of statutory interpretation that "when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *Robert*, 966 A.2d at 121 (internal quotation marks omitted); *see also Drs. Pass and Bertherman, Inc. v. Neighborhood Health Plan of Rhode Island*, 31 A.3d 1263, 1269 (R.I.2011); *DeMarco v. Travelers Insurance Co.*, 26 A.3d 585, 616 (R.I.2011); *Sidell v. Sidell*, 18 A.3d 499, 504 (R.I.2011). In reviewing the language of a statute, "our ultimate goal is to give effect to the General Assembly's intent," and we have repeatedly observed that "[t]he plain statutory language is the best indicator of [such] intent." *DeMarco*, 26 A.3d at 616 (first alteration in original) (internal quotation marks omitted); *see also Mullowney v. Masopust*, 943 A.2d 1029, 1034 (R.I. 2008); *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003) ("The best evidence of [legislative] intent can be found in the plain language used in the statute"). Therefore, "when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." *In re Harrison*, 992 A.2d 990, 994 (R.I.2010) (internal quotation marks omitted); *see also Robert*, 966 A.2d at 122; *Marsocci v. Marsocci*, 911 A.2d 690, 696 (R.I.2006).

## C

### The Plaintiff's Contention as to § 28–5–17(d)

When one scrutinizes the language of § 28–5–17(d), it is clear that the statute provides that an attestation declaring that a waiver of attorneys' fees was not compelled as a condition of a settlement is required when a consent order or conciliation agreement is entered *by the Commission*. The language of that statutory provision is plain and unambiguous; it is clear that the General Assembly expressed its intent that that provision apply to the specifically referenced actions that might be undertaken by the Commission. In the case at hand, however, in no sense was the release document that was signed by plaintiff (which document provided for the waiver of potential claims for attorneys' fees) a "consent order or conciliation agreement" entered by the Commission. *See* § 28–5–17(d). The release document was part of a settlement agreement between two private parties (plaintiff and Zebra Atlantek), and there was absolutely no involvement *by the Commission* with respect to that agreement. Moreover, it is undisputed that the only action undertaken by the Commission in relation to the instant matter was to issue a "Notice of Right to Sue," which notice was neither a consent order nor a conciliation agreement. Accordingly, in our judgment, the provisions of § 28–5–17(d) are inapplicable to the facts of the instant case.

## D

### The Plaintiff's Contention as to § 28–5–24.1(d)

#### 1. The "Consent Order" and "Judgment Settling" Language in the Statute

With respect to § 28–5–24.1(d), plaintiff argues that that section "means that the

court cannot enter a judgment that resolves FEPA claims based on an agreement made between the parties 'unless the parties and their counsel attest that a waiver of all or substantially all attorneys' fees was not compelled as a condition of the settlement.'"[12] The plaintiff further contends that the Superior Court essentially "enforce[d]" the release document because its entry of judgment in favor of defendants was premised upon the existence of the release document.

In order to evaluate plaintiff's argument, we look to the plain language of the statutory provision. *See DeMarco,* 26 A.3d at 616; *Martone,* 824 A.2d at 431. Section 28–5–24.1(d) prohibits the Superior Court from entering "a consent order or judgment settling [FEPA] claims of discrimination" unless the parties and their counsel attest that a waiver of attorneys' fees was not compelled as a condition of the settlement. It is clear that that provision applies only in instances where the court enters *a consent order* or *a judgment settling* a claim based on the FEPA. The plaintiff does not contend that a consent order was entered by the Superior Court in this case, and we certainly do not view the entry of summary judgment in favor of a party to be in any sense a consent order.

■ We next focus on the phrase in § 28–5–24.1(d) concerning a "judgment settling claims of discrimination" in order to determine whether the entry of summary judgment disposing of plaintiff's claims on the basis of the release document was "a judgment settling claims of discrimination." There is no question that the Superior Court entered a judgment in this case. However, the judgment which was entered in favor of defendants did not "settle" the claims of discrimination; rather, it constituted a dismissal of plaintiffs claims against defendants in the context of a judgment on the merits.

■ It is well established that "[w]hen * * * a statute does not define a word, courts will often apply a common meaning as provided by a recognized dictionary." *Robert,* 966 A.2d at 123; *see also Drs. Pass and Bertherman, Inc.,* 31 A.3d at 1269; *In re Proposed Town of New Shoreham Project,* 25 A.3d 482, 513 (R.I.2011); *Defenders of Animals, Inc. v. Department of Environmental Management,* 553 A.2d 541, 543 (R.I.1989). In the statute presently at issue, the General Assembly did not provide its own definition of the term "settling," and therefore we proceed to look at dictionary definitions of that term. The American Heritage Dictionary of the English Language includes the verb form "settling" under the definition of "settle;" and the pertinent definition of settle is "[t]o come to an agreement, especially to resolve a lawsuit out of court." The American Heritage Dictionary of the English Language 1593 (4th ed.2009); *see* The Random House Dictionary of the English Language 1752 (2d ed.1987) (including the verb form "settling" under the definition of "settle" and defining "settle" in the pertinent definition as meaning "to terminate (legal proceedings) by mutual consent of the parties"); *see also* Black's Law Dictionary 1496 (9th ed.2009) (including the verb form "settle" under the definition of "settlement" and defining "settlement" in the second (and pertinent) definition, as "[a]n agreement ending a dispute or lawsuit"). The judgment in this case was not the product of the parties having "come to an agreement." Rather, the Superior Court ruled that defendants were entitled to judgment after considering the arguments of the parties at a hearing on a motion for

---

**12.** The language quoted in the text is from plaintiff's Rule 12A statement to this Court, which itself quotes a portion of § 28–5–24.1(d).

summary judgment—an inherently adversarial proceeding quite distinct from the pacific and cooperative characteristics of the settlement process.[13] Accordingly, we hold that the clear and unambiguous language of § 28–5–24.1(d) does not apply to the action taken by the Superior Court in the instant case.

## 2. The Plaintiff's "Form Over Substance" Contention

The plaintiff further contends that the hearing justice focused on "mere form over substance" and thereby rendered the cited provision of the FEPA meaningless when she ruled that the waiver of attorneys' fees was not contained in what the statute refers to as a "judgment settling claims," but rather in what the court characterized as a "contract that was not intended to directly settle Plaintiff's then pending FEPA claims." In arguing that "form over substance arguments should not prevail," plaintiff makes reference to § 28–5–38(a), which states: "The provisions of this chapter [*i.e.*, the FEPA] shall be construed liberally for the accomplishment of the purposes of it, and any law inconsistent with any provision of this chapter shall not apply."

■ As indicated above, the language of the statutory provision upon which plaintiff relies is both clear and unambiguous; and the language of that statute does not by any stretch of the imagination provide any support for plaintiff's contention. It is axiomatic that "[w]here there is no ambiguity, [this Court is] not privileged to legislate, by inclusion, words which are not found in the statute." *Wayne Distributing Co. v. Rhode Island Commission for Hu-*

*man Rights,* 673 A.2d 457, 460 (R.I.1996); *see also Sindelar v. Leguia,* 750 A.2d 967, 972 (R.I.2000) ("[O]ur assigned task is simply to interpret the Act, not to redraft it * * *."). If the General Assembly desired to extend the attestation by counsel requirement to a situation such as the instant case presents, we do not doubt that it could have done so; but the blunt fact is that it did not do so. *See Pizza Hut of America, Inc. v. Pastore,* 519 A.2d 592, 594 (R.I.1987) ("If the [C]ourt has not interpreted the statute in a manner consistent with the legislative intent * * *, further societal response is the exclusive prerogative of the Legislature.").

■ It is not our role to contort the language of an unambiguous statute in order to include within its reach a situation which it plainly does not encompass. *See Castelli v. Carcieri,* 961 A.2d 277, 285 (R.I. 2008) ("It is not the proper role of the judiciary to bestow rights or to take them away."); *see also Chambers v. Ormiston,* 935 A.2d 956, 965 (R.I.2007) ("Having made [the] determination as to the statute's unambiguous meaning, our role is at an end; we have no constitutional authority to extend the scope of this or any other statute.").

Accordingly, we hold that the hearing justice did not err in granting summary judgment in favor of the defendants.

## IV

## Conclusion

For the reasons stated in this opinion, we affirm the judgment of the Superior

---

**13.** We also note that, in essence, plaintiff's discrimination claims were settled when plaintiff signed the release seven months prior to the filing of his complaint in Superior Court. At that time, the parties came to an agreement that, in exchange for plaintiff waiving all FEPA claims (*inter alia* ), Zebra Atlantek would provide plaintiff with a severance package.

Court. The record may be remanded to that tribunal.