May 2, 2024

**Supreme Court**

No. 2021-185-M.P.
(PC 20-6691)

City of Pawtucket           :

v.                 :

The Rhode Island Department of     :
    Revenue et al.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

City of Pawtucket                          :

v.                          :

The Rhode Island Department of             :
          Revenue et al.


Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Robinson, for the Court.** The plaintiff, the City of Pawtucket (the City), petitioned this Court for the issuance of a writ of certiorari to review a July 27, 2021 judgment granted in favor of the defendants—the Rhode Island Department of Revenue (DOR); Marilyn McConaghy, in her official acting capacity as Director of the DOR;[1] the Rhode Island Division of Municipal Finance; and Steven E. Coleman, Jr., in his official capacity as Chief of the Rhode Island Division of Municipal Finance. We granted the City's petition on April 15, 2022. The City argues before this Court that the hearing justice erred in upholding the DOR's

---

[1] During the pendency of this appeal, Thomas A. Verdi became Director of the DOR.

interpretation of G.L. 1956 § 45-13-5.1 (the PILOT[2] Act) to the effect that the properties at issue were not eligible for PILOT funds.

For the reasons set forth in this opinion, we quash the writ and affirm the judgment of the Superior Court.

## I

## Facts and Travel

This case arises out of an administrative appeal from the DOR's determination that two properties owned by The Memorial Hospital (Memorial Hospital)—one located at 111 Brewster Street in Pawtucket, Rhode Island, and a second located at 555 Prospect Street (also in Pawtucket)—were not eligible for state aid pursuant to § 45-13-5.1[3] for fiscal year 2021 (FY 2021) and fiscal year 2022 (FY 2022).

The facts of this case are largely uncontested. In or about 2017, Care New England Health System (CNE), which is the parent company of Memorial Hospital, applied to the Rhode Island Department of Health for authorization to eliminate the emergency department at Memorial Hospital. In May of 2018, CNE's application was approved, and Memorial Hospital's license was deactivated. However, medical

---

[2]     For the purposes of this opinion, the term PILOT stands for "payment in lieu of taxes."

[3]     *See* Part IV.B, *infra*.

care and treatment services have continued to be provided at the two properties through licenses held by Kent County Memorial Hospital (Kent County Hospital) and Women & Infants Hospital of Rhode Island (Women & Infants Hospital).[4]

As it had done in previous years, in July of 2019 the City submitted its annual PILOT form to the DOR as a prelude to its anticipated receipt of PILOT funds for FY 2021.[5] The DOR had sent the form to the City in June of 2019—the form being largely based on the form the City had submitted in 2018. Very significantly, however, the 2019 form sent to the City by the DOR contained a "strike through" relative to the two properties, and it included a new assessment of zero relative to the properties as well as a notation stating that "Memorial [Hospital is] no longer a licensed hospital."[6] After the DOR received and reviewed the City's completed July

---

[4]     Throughout this opinion, when referring to them collectively, we shall refer to these two properties by the shorthand expression "the two properties."

[5]     A municipality seeking appropriation of funds under the PILOT Act must, by the first of August each year, provide the DOR with certain information (including assessment data) regarding any properties for which the municipality is seeking PILOT funds. *See* G.L. 1956 §§ 45-13-5.1–5.2. Upon receipt of the requisite information and documentation, the DOR evaluates the submissions and determines which properties are eligible for the PILOT funds that will be disbursed in the following calendar year. *See* §§ 45-13-5.1(f)–5.2.

[6]     After receiving the 2019 PILOT form for FY 2021, the City's Tax Assessor, Robert Burns, sent an e-mail to State Aid and Finance Specialist, Jill Barrette, stating that "the properties owned by Memorial Hospital are still owned by Memorial Hospital and we should include the assessed values this year." On June 27, 2019, Ms. Barrette responded: "I received your [e-mail] and we are looking into this. We will be in touch." Several minutes later, Mr. Burns replied by e-mail as follows:

2019 PILOT form, the parties communicated informally over eligibility for more than one year.[7]  In late July of 2020, the City received its first monthly installment of PILOT funds, receiving one-twelfth of $3,521, rather than an amount comparable to the one-twelfth of the $579,677 that it had received for FY 2020 when the properties were deemed eligible for PILOT funds.

Additionally, in July of 2020, the DOR sent the City a PILOT form to be submitted for FY 2022.  Unlike the 2019 form, the 2020 form did not make any mention of the two properties.  On July 29, 2020, the City submitted its 2020 PILOT form to the DOR; however, the City had edited the form so as to include the two properties with an asterisk and a notation stating that the City "believes these

---

"Book 137 Page 113 of the deed from Frederick Sayles to Memorial Hospital does not allow for the property to be used for any other purpose than a hospital."  The record reveals no further correspondence between Mr. Burns and Ms. Barrette concerning the matter.

[7]  Beginning in the Fall of 2019, the Chief of the Rhode Island Division of Municipal Finance, Steven Coleman, explained to the City that the properties at issue "were not eligible for PILOT funds because Memorial Hospital was no longer a licensed hospital facility * * *."  On January 16, 2020, Mr. Coleman sent the City an e-mail attaching a formal report that indicated the PILOT funds which Pawtucket was scheduled to receive for FY 2021; and that report did not include funding for the two properties.  On January 24, 2020, the Mayor of Pawtucket wrote a letter to the then-Director of the DOR, Mark Furcolo, stating in part that he was aware that the "appropriation made to the [City] afforded under the [PILOT Act] related to [Memorial Hospital] is slated to be eliminated under the Governor's proposed Fiscal Year 2021 budget."  On July 30, 2020, Mr. Coleman sent the City an e-mail with an attachment containing the specific amount that the City was scheduled to receive in PILOT funds for FY 2021.

properties are eligible for the PILOT program." During the month of August, the parties communicated by e-mail concerning the matter. In a letter dated September 10, 2020, the Director of the DOR formally notified the City that "[s]ince Memorial Hospital is not a nonprofit hospital licensed by the state, the property does not qualify for inclusion in the grant program."

On September 23, 2020, the City filed a four-count complaint in Providence County Superior Court. The City's complaint requested the following: administrative review of the DOR's decision to deny PILOT funds for the two properties (Count One); declaratory relief (Count Two); injunctive relief (Count Three); and a writ of mandamus (Count Four).

On November 30, 2020, defendants filed a "Motion for Summary [Judgment] and Affirmance of Defendants' Administrative Decision." The defendants contended that they were entitled to summary judgment on Count One because (1) there was no evidence in the administrative record that the properties were owned by a nonprofit hospital licensed by the state; and (2) the City's complaint was untimely. The defendants additionally averred that the other counts (Counts Two through Four) were not properly before the court because "judicial review under the [Administrative Procedures Act (APA)] is the sole relief available" and because they were derivative of Count One.

On January 27, 2021, the City filed an objection to defendants' motion for summary judgment, contending that defendants' interpretation of the PILOT Act "promotes form over substance, undercuts the General Assembly's intent, and leaves the City facing an absurd result * * *." The City also asserted that its appeal from the DOR's decision was timely regardless of whether the two-week appeal period pursuant to § 45-13-5.2 or the thirty-day appeal period pursuant to the APA applied. In addition, the City argued that Counts Two, Three, and Four were procedurally proper.

On February 24, 2021, a hearing on defendants' motion for summary judgment took place in Superior Court. At the conclusion of the hearing, the hearing justice continued the matter for a decision. On March 10, 2021, the hearing justice requested that the parties submit additional memoranda addressing (1) whether the DOR's decision on eligibility was in actuality a reevaluation for purposes of the appeal process set forth in § 45-13-5.2; and (2) whether declaratory relief could be issued given the language of § 45-13-5.1(e).[8]

On May 19, 2021, the hearing justice rendered a bench decision. Regarding the issue of whether the City's appeal was timely, the hearing justice determined that "the question of eligibility is a question precedent to be determined by the

_____

[8] The City filed its memorandum on April 1, 2021; defendants submitted their memorandum on April 21, 2021.

- 6 -

Department of Revenue under 45-13-5.1," and he added that, because § 45-13-5.1 "has no appellate proceedings set out in it, and since the PILOT Act is administered by an agency of state government, its appellate provisions are found within the APA itself, 42-35-15(b)." Consequently, the hearing justice found that the appeal period was thirty days, as provided in G.L. 1956 § 42-35-15(b). Moreover, the hearing justice found that the appeal period was not triggered until formal notice from the DOR denying eligibility to the City was provided in the form of the letter dated September 10, 2020. For these reasons, the hearing justice held that the appeal was timely.

Turning to the merits of the case, the hearing justice indicated that the issue of eligibility of the two properties for PILOT funds was controlled by the principles of statutory interpretation. The hearing justice found to be irrelevant the fact that all three nonprofit hospitals (Kent County Hospital, Women & Infants Hospital, and Memorial Hospital) were owned by CNE. The hearing justice ultimately ruled that the DOR's interpretation of the PILOT Act was not "arbitrary or capricious, unsupported in the record, or an abuse of discretion." He concluded "as a matter of law and statutory interpretation" that the properties "are not owned by a licensed hospital and, therefore, [are] ineligible for the consideration under the PILOT statute." Because his decision as to Count One was dispositive, the hearing justice ruled that the remaining counts were moot.

On July 27, 2021, an order reflecting the hearing justice's decision entered; final judgment in favor of defendants entered on the same day. On August 16, 2021, both parties filed petitions for the issuance of a writ of certiorari. On April 15, 2022, this Court granted the City's petition and denied the petition filed by defendants.

## II

## Issues Presented

The City contends that its appeal to the Superior Court was timely under the application of either § 45-13-5.2 or § 42-35-15(b). With respect to the merits, the City argues that, taking into account the language and the purpose of the PILOT Act, the City remained eligible for PILOT Act funding. Accordingly, it asserts that the hearing justice erred in adopting the DOR's determination that the City was no longer eligible to receive PILOT funds pursuant to § 45-13-5.1 for the two properties "merely because those two properties were not owned and licensed by the same entity."

## III

## Standard of Review

Section 42-35-15(g) of the APA, which governs the Superior Court's review of an administrative appeal, reads as follows:

> "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse

- 8 -

or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) In violation of constitutional or statutory provisions;

"(2) In excess of the statutory authority of the agency;

"(3) Made upon unlawful procedure;

"(4) Affected by other error of law;

"(5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

"(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

This Court's review of the Superior Court's judgment in administrative proceedings is also limited by the APA. *See* § 42-35-16. When this Court conducts such a review, it is "limited to questions of law," which we review in a *de novo* manner. *Rossi v. Employees' Retirement System*, 895 A.2d 106, 110 (R.I. 2006). We accord great deference to the factual findings of the administrative agency. *Id.*

## IV

## Analysis

## A

## Timeliness of the Superior Court Appeal

We begin our review by addressing defendants' contention that the City's appeal to the Superior Court was untimely. The defendants assert that the two-week

appeal period set forth in § 45-13-5.2 was controlling. They further contend that, because the City's appeal was filed on September 23, 2020, "it must have received notice of DOR's determination that the properties were ineligible no sooner than September 9, 2020." The defendants accordingly take the position that the City's appeal was untimely because "the City received notice that DOR did not deem the [p]roperties to be eligible for PILOT funds many times before September 9, 2020." (Emphasis in original omitted.) Additionally, defendants argue that, even if this Court were to apply § 42-35-15(b)'s appeal period, the City's appeal would still be untimely.

Before determining the correct statutory appeal period to be applied in this case, we must first ascertain when the City received final, formal notice of the DOR's decision to deny the City's request for PILOT funds for the two properties.

Pursuant to § 45-13-5.2:

> "The director of revenue may, on or before April 30 next succeeding the receipt of the statement, reevaluate any exempt property when, in the director's judgment the valuation made by the local assessor or assessors is inaccurate, and shall notify the municipality of the reevaluation. Any municipality aggrieved by the action of the director of revenue under the provisions of this section may, within two (2) weeks of the notice, file an appeal consistent with the provisions of chapter 35 of title 42."

Turning to the APA, it instructs, in relevant part: "Proceedings for review are instituted by filing a complaint in the superior court of Providence County or in the

- 10 -

superior court in the county in which the cause of action arose * * * within thirty (30) days after mailing notice of the final decision of the agency * * *." Section 42-35-15(b).

Although § 45-13-5.2 does not specify what form notice must take, and while § 42-35-15(b) provides that an appeal may be made "after mailing notice of the final decision of the agency," it is our opinion that the September 10, 2020 letter was the only final, formal, and written decision of the DOR from which an appeal could be taken. The DOR's attempt to persuade this Court that various earlier communications and actions (including but not limited to e-mails between the parties informally discussing the matter; delivery of the PILOT funding report to the City on January 16, 2020; and receipt of the first monthly installment of PILOT funds in late July of 2020) put the City on notice of the DOR's decision is unavailing. While it may possibly be that those communications and actions constituted some sort of advance indication that the eligibility of the two properties for PILOT funds was in question, the City did not possess any formal notice of a final decision by the DOR that would in effect trigger an appeal period until the September 10, 2020 letter.

It is our definite view, therefore, that, in order to satisfy the notice requirement in the present case pursuant to either the PILOT Act or the APA, notice had to take the form of a final written decision by the DOR. And this determination aligns with rational public policy. When written formal notice of a final decision of an agency

- 11 -

is provided to a party, that action provides a clear and unequivocal signal that the clock for the exercise of appellate rights has begun to tick. Certainty as to when an appeal period begins is of particular importance in this domain.

As a result of our conclusion that final, formal notice of the DOR's decision to deny eligibility took the form of its September 10, 2020 letter to the City, we decline to determine which statutory appeal period (§ 45-13-5.2 or § 42-35-15(b)) is applicable. Upon receiving the DOR's September 10, 2020 letter, the City initiated its action in Superior Court on September 23, 2020. Accordingly, under *either* § 45-13-5.2 (two-week appeal period) or § 42-35-15(b) (thirty-day appeal period), the City's appeal was timely.

**B**

**Statutory Interpretation of the PILOT Act**

The City contends that the DOR's interpretation of the PILOT Act[9] and the hearing justice's affirmance thereof are the product of an overly mechanical and restrictive definition of the term "nonprofit hospital facility." It argues that the DOR's interpretation of the statutory language is overly mechanical and restrictive "especially when weighed against the statute's purpose and read in conjunction with state law governing local taxation." Specifically, the City argues that this Court should "harmonize the language of the PILOT Act with its purpose, with § 44-3-3

---

[9]     The text of the relevant portion of the PILOT Act is set forth *infra*.

- 12 -

[the statute concerning the status of tax-exempt property], and avoid a 'mechanical application of' the 'statutory definition' of a 'nonprofit hospital facility,' which has 'produced an absurd result or defeated legislative intent.'" (Brackets in original omitted.) The City asserts that the fact that licenses were held by affiliated nonprofit hospital corporations rather than the property-owner (Memorial Hospital) "should not have altered the [p]roperties' * * * eligibility for PILOT Act funding."

For their part, defendants assert that the "Superior Court properly applied the plain text of the PILOT Act to the undisputed facts to affirm DOR's determination that the [p]roperties are ineligible for PILOT funds because they are not owned by a 'nonprofit hospital licensed by the state.'"

This Court has "often noted [that] it is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings." *State v. Santos*, 870 A.2d 1029, 1032 (R.I. 2005) (internal quotation marks and brackets omitted). It is also "well established that when we examine an unambiguous statute, there is no room for statutory construction and we must apply the statute as written." *Id.* (internal quotation marks omitted). We have noted that the "plain statutory language is the best indicator of legislative intent." *Id.*; *see Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I. 2003) ("When interpreting a statute, our ultimate goal is to give effect to the General Assembly's intent. * * * The best

- 13 -

evidence of such intent can be found in the plain language used in the statute. Thus, a clear and unambiguous statute will be literally construed.").

Section 45-13-5.1(a) of the PILOT Act provides:

> "In lieu of the amount of local real property tax on real property owned by any private nonprofit institution of higher education, or any *nonprofit hospital facility*, or any state owned and operated hospital, veterans' residential facility, or correctional facility occupied by more than one hundred (100) residents which may have been or will be exempted from taxation by applicable state law, exclusive of any facility operated by the federal government, the state of Rhode Island, or any of its subdivisions, the general assembly shall annually appropriate for payment to the several cities and towns in which the property lies a sum equal to twenty-seven percent (27%) of all tax that would have been collected had the real property been taxable; provided, however, said percentage shall be subject to adjustment pursuant to subsection (e) of this section." (Emphasis added.)

Furthermore, the PILOT Act expressly defines the term "nonprofit hospital facility" as "any nonprofit hospital *licensed* by the state and which is used for the purpose of general medical, surgical, or psychiatric care and treatment." Section 45-13-5.1(c) (emphasis added).

It is plainly evident from the text of the PILOT Act that the definition of "nonprofit hospital facility" is comprised of two components: (1) it must be a nonprofit hospital licensed by the state; and (2) it must be used for the purpose of general medical, surgical, or psychiatric care and treatment. *See* § 45-13-5.1(c). We detect no ambiguity in the PILOT Act's definition of "nonprofit hospital facility."

- 14 -

It is clear to us that the statutory language mandates that the hospital-owner of the property must also be the holder of a state-issued license. Thus, in order to qualify for PILOT Act funds, the subject property must be owned by a nonprofit hospital facility that is both licensed by the state and used for the purposes of medical care and treatment.

It is undisputed here that Memorial Hospital was the owner of the two properties at the time the City filed its PILOT forms for FY 2021 and FY 2022. Importantly, however, it is also undisputed that Memorial Hospital's license was deactivated in May of 2018. The City's argument—that, because Kent County Hospital and Women & Infants Hospital held their own licenses and provided medical care and/or treatment, the City was entitled to the distribution of PILOT funds—misses the mark. Specifically, its contention that the "undefined phrase 'licensed by state' could serve only one rational purpose: ensuring that properties are actually *used* for the provision of medical care" would render the first component of the definition of "nonprofit hospital facility" (i.e., licensure) to be meaningless. *See St. Clare Home v. Donnelly*, 117 R.I. 464, 470, 368 A.2d 1214, 1217-18 (1977) ("In giving construction to a statute, the [C]ourt is bound, if it be possible, to give effect to all its several parts. No sentence, clause or word should be construed as unmeaning and surplusage, if a construction can be legitimately found which will give force to and preserve all the words of the statute."); *see also Wayne Distributing*

*Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I. 1996) ("Where there is no ambiguity, we are not privileged to legislate, by inclusion, words which are not found in the statute.").

The plain, blunt fact is that neither Kent County Hospital nor Women & Infants Hospital owned the properties at issue, and the City cannot overcome the fact that the owner of the properties, Memorial Hospital, is no longer a *licensed* nonprofit hospital facility. If the General Assembly desired to extend the definition of nonprofit hospital facility so as to include all properties used for the provision of medical care, we have no doubt that it could have done so; but the fact is that it did not do so. *See State v. Fuller-Balletta*, 996 A.2d 133, 140 (R.I. 2010) ("When the language of a statute is unambiguous and expresses a clear and sensible meaning, there is no room for statutory extension.") (deletions omitted) (quoting *McGuirl v. Anjou International Co.*, 713 A.2d 194, 197 (R.I. 1998)); *see also Olamuyiwa v. Zebra Atlantek, Inc.*, 45 A.3d 527, 536 (R.I. 2012); *Pizza Hut of America, Inc. v. Pastore*, 519 A.2d 592, 594 (R.I. 1987) ("If the [C]ourt has not interpreted the statute in a manner consistent with the legislative intent * * *, further societal response is the exclusive prerogative of the Legislature."); *Little v. Conflict of Interest Commission*, 121 R.I. 232, 237, 397 A.2d 884, 887 (1979). As this Court has previously noted, it is not the role of this Court to contort unambiguous language so as to extend it. *Olamuyiwa*, 45 A.3d at 536 ("It is not our role to contort the language

of an unambiguous statute in order to include within its reach a situation which it plainly does not encompass."); *Iselin v. Retirement Board of Employees' Retirement System of Rhode Island*, 943 A.2d 1045, 1049 (R.I. 2008) (noting that the Court's "assigned task is simply to interpret the act, not redraft it") (quoting *Sindelar v. Leguia*, 750 A.2d 967, 972 (R.I. 2000)).

Additionally, because the plain, unambiguous language of the PILOT Act is dispositive, we view the City's argument conflating tax-exempt status with PILOT fund eligibility as similarly unpersuasive. The City asserts that the PILOT Act "must be read to effectuate its purpose: providing cities and towns with a proportional reimbursement for the lost revenue in taxes that they may otherwise have collected on certain tax-exempt property * * *." This Court's interpretation of the PILOT Act is completely consistent with its plain language and is in no way inconsistent with the statute's intended purpose—providing funding for tax-exempt properties that are owned by nonprofit hospitals licensed by the state. Consequently, it is our view that the City's assertion that what it characterizes as the "mechanical" and "overly restrictive" interpretation of the term "nonprofit hospital facility" produces an absurd result is without merit.

Accordingly, Memorial Hospital did not meet the PILOT Act's explicit definition of "nonprofit hospital facility," and we discern no error in the DOR's

decision to deny the disbursement of PILOT funds for FY 2021 and FY 2022 with respect to the two properties owned by Memorial Hospital.[10]

## V

## Conclusion

For the reasons set forth in this opinion, we quash the writ and affirm the judgment of the Superior Court. We remand this case to the Superior Court with our decision endorsed thereon.

---

[10]   As a result of our conclusion that the DOR's decision to deny PILOT Act fund eligibility for the two properties for FY 2021 and FY 2022 was not erroneous, we need not reach the other arguments addressed by the City.

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | City of Pawtucket v. The Rhode Island Department of Revenue et al. |
| **Case Number** | No. 2021-185-M.P. <br> (PC 20-6691) |
| **Date Opinion Filed** | May 2, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice William P. Robinson III |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard D. Raspallo |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Edward David Pare, III, Esq. <br> For Defendants: <br><br> Katherine Connolly Sadeck, Esq. |